[No. 39012.    Department One.    May 2, 1968.]

REEFER QUEEN COMPANY, INC., *Plaintiff*, v. MARINE
CONSTRUCTION AND DESIGN COMPANY, *Respondent*, J. M.
MARTINAC SHIPBUILDING CORPORATION, *Defendant*, MANTEL
GEAR WORKS, INC., *Appellant*.*

*Paul W. Steere*, for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann, Frederick
V. Betts, James M. Lindsey, Jr., Graham, Dunn, Johnston
& Rosenquist, Ben J. Gantt, Jr.,* and *Jack G. Strother*, for
respondent.

LANGENBACH, J.†—This is a third-party action for indemnity by a manufacturer against its subcontractor for damages. It is an offshoot and sequel to *Reefer Queen Co. v.
Marine Constr. & Design Co.*, ante p. 774, 440 P.2d 448
(1968). The parties will be designated here in the same
manner as they were in that action. Plaintiff will be referred to as plaintiff corporation; J. M. Martinac Shipbuilding Corporation, referred to as Martinac; Marine Construction and Design Company, referred to as Marco, and Mantel Gear Works, Inc., referred to as Mantel, the third-party

*Reported in 440 P.2d 453.

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

defendant. (The main facts of this controversy appear in the preceding opinion and will not be repeated.)

Marco is the manufacturer and supplier of purse seine winches for use on tuna fishing vessels. It manufactured and delivered such a winch to Martinac for installation on a tuna fisher it was building for plaintiff corporation. In a winch of the type used for purse seining, there are three soft steel shafts, about 10 inches long and 3 inches in diameter. They are required to be ground to a precise diameter and then case-hardened[1] on the surface to a definite standard of hardness to maintain a bearing in operation.

Marco fabricated such shafts and sent them to Mantel with a purchase or work order with definite written instructions as to the grinding of the exterior and case hardening thereafter to precise specifications. The receipt of such a written order was admitted by Mantel. But one of its office employees, when he received the order, failed to notify the shop foreman that case hardening was included and required. Mantel did not have the requisite equipment to case harden such shafts, and previously had sent such shafts to other shops equipped with case hardening machinery. After Mantel had ground these shafts precisely, they were returned to Marco without being case-hardened. The evidence showed that there were several tests whereby the condition of such shafts might easily be determined—by visual observation, by use of a file or knife, or by special testing devices.

Marco did not inspect these shafts upon their return but placed them in the winch in a soft, exterior condition. During the vessel's maiden voyage, two breakdowns of the winch occurred. One shaft had failed, and the plaintiff corporation notified Marco, which sent a new shaft for replacement in the vessel in the Canal Zone. The vessel then resumed fishing operations and a second breakdown occurred. At that time, Marco, when notified, sent an officer

---

[1] In case hardening, the outer surface of a shaft is made extremely hard so that it will be suitable for use as a bearing surface. The process affects only the outer surface of the shaft and leaves the core of the shaft soft and tough.

down, and he discovered that the other two original shafts were likewise defective in that they had not been case-hardened by Mantel.

Because of the delays resulting from these shaft failures, plaintiff corporation sued the other parties for damages and loss of profits. The case was tried to a jury, which returned a verdict for damages against Marco. In a second verdict, based upon Marco's third-party action against Mantel, the jury found for Marco against Mantel but awarded no recovery of any monetary damages.

Following the entry of a judgment for plaintiff corporation against Marco, the court granted Marco a new trial against Mantel. Mantel has appealed, and its appeal was heard following the main appeal by Marco in the prior decision.

Mantel had denied all liability as to Marco and had affirmatively pleaded that Marco had failed to supply it with any plans concerning the use of these three shafts in the idler gears of the purse seine winch when the work order was presented with the unfinished shafts. Mantel had no equipment to case harden such shafts and Marco should have known that they had not been case-hardened, as no charge had been made for such services. (The bill for grinding the shafts was only $4 per shaft.) There was no sales warranty as Mantel had only ground the exterior surface of the shafts, and Marco's negligence in failing to inspect the returned shafts barred any claim of negligence against Mantel. In addition, Mantel alleged further negligence on Marco's part in not sending service personnel to the Canal Zone at the time of the first breakdown. By so doing, Marco could have discovered that the two remaining shafts were likewise defective, and thus could have avoided the second breakdown with proportionate diminution of damages.

Mantel maintained that its liability for breach of contract was limited to its share of the costs of making repairs to the defective part, namely $250 which it had already paid. It further claimed that Marco was negligent in not making

cursory or simple inspection tests before placing these shafts inside the winch. Another contention was that there was a difference in degree in the negligence between it and Marco. Its negligence might be classified as passive, while that of Marco was active. Under that reasoning, no liability rested upon Mantel.

Mantel's only assignment of error was that the court erred in granting Marco's motion for a new trial against it, and in ruling therewith that the question of whether Marco's negligence was active or passive was a question of fact for the jury.

These two parties agreed that if Marco was actively negligent when it failed to test or inspect the three idler shafts for case hardening before they were installed in the Reefer Queen winch, then Marco cannot recover from Mantel for any negligence on Mantel's part in failing to send the shafts out to a commercial steel treater for case hardening.

During the arguments pertaining to the post trial motions, the court commented:

"The Court withdrew the issue of negligence from the jury in its indemnity action against Mantel. By doing so it ruled in effect that if the jury found Marco liable to the plaintiff for negligence such negligence would be active negligence as a matter of law, precluding recovery over on indemnity. The jury did, in fact, find Marco negligent. In arguing for a new trial, Marco's contention is that the jury should have determined what the quality of Marco's negligence was, 'active' or 'passive.' Therefore, the precise question for the Court at this time is whether the characterization of negligence as active or passive is a determination which the Court is entitled to make as a matter of law."

That precisely and exactly states the issue, as I understand it.

It is Mantel's contention that the verdict of the jury established that Marco was liable to the plaintiff corporation for its negligence in failing to inspect the idler shafts for hardness. And, by its verdict against Mantel for no damages, the jury determined that Mantel did not know the intended use of the idler shafts and did not anticipate

or foresee the effects of its failure to fulfill the contract to case harden the shafts, such as the failure of the tuna purse seine winch and the subsequent loss of fish profits.

It is the position of respondent Marco that the issue is whether or not Marco's theory of indemnity, as based upon Mantel's negligence, should have been submitted to the jury under appropriate instructions.

Both parties cite and countercite many cases in support of their respective contentions on the general theory of indemnity between joint tort-feasors. Among these is *Mc-Fall v. Compagnie Maritime Belge (Lloyd Royal) S. A.,* 304 N. Y. 314, 328, 107 N.E.2d 463 (1952), which held:

> The right to indemnity, as distinguished from contribution, is not dependent upon the legislative will. It springs from a contract, express or implied, and full, not partial, reimbursement is sought. Where several tort-feasors are involved an implied contract of indemnity arises in favor of the wrongdoer who has been guilty of passive negligence, if there be such, against the one who has been actively negligent. The actively negligent tort-feasor is considered the primary or principal wrongdoer and is held responsible for his negligent act not only to the person directly injured thereby, but also to any other person indirectly harmed by being cast in damages by operation of law for the wrongful act. Whether negligence is passive or active is, generally speaking, a question of fact for the jury.

Another case jointly relied on is *Rufener v. Scott,* 46 Wn.2d 240, 242, 280 P.2d 253 (1955):

> It is the general rule that there is no right of indemnity between joint tort-feasors. *Duncan v. Judge,* 43 Wn. (2d) 836, 264 P. (2d) 865. However, if the tort-feasors are not *in pari delicto*, and the negligence of one is primary or active, and the negligence of the other is passive, resulting in injury to a third person, and the one guilty of passive negligence is required to answer in damages to the third person, he is entitled to indemnity from the wrongdoer guilty of primary negligence. . . . The rule is stated in 27 Am. Jur. 467, Indemnity, § 18:
>
> "But the operation of this rule against recourse is greatly circumscribed, with the result that one constructively liable for a tort is generally held entitled to indem-

nity from the actual wrongdoer, regardless of whether liability is imposed on the person seeking indemnity by statute or by rule of the common law, and irrespective of the existence of an express contract to indemnify. Accordingly, it has been stated that a person who, without fault on his own part, has been compelled to pay damages occasioned by the primary negligence of another is entitled to indemnity from the latter, whether contractual relations exist between them or not. In this connection it has been observed that where one does the act or creates the nuisance, and the other does not join therein, but is thereby exposed to liability and suffers damage, the rule denying contribution or indemnity between joint tort-feasors does not apply, the parties not being in pari delicto as to each other, though either may be held liable as to third persons."

■ There is, under the rules thus stated, no right of indemnity between joint tort-feasors. However, it cannot be determined as a matter of fact or of law that Mantel was guilty of primary negligence. Mantel was furnished the three idler shafts to be ground and case-hardened to specifications. It ground the shafts and returned them without being case-hardened and charged Marco only for the grinding at the nominal sum of $4 per shaft.

Marco's crew consisted of skilled workmen. Even a momentary visual inspection would have revealed the fact that these shafts had not been case-hardened. They were to be an incidental, but a very important and essential, part of the winch, which plays a very vital role in purse seining operations. On its successful and continuous operation depends the entire profit of the voyage.

Marco's employees should have seen and observed that the shafts were only soft steel, incapable of sustaining the weights and frictions placed upon them during the activation and operation of this winch. In addition, the failure of Marco to inspect the winch after the first breakdown (when one shaft was found defective) or to suspect that the other two shafts might be in the same defective condition, resulted in the second breakdown and a further loss of profits and damages to plaintiff corporation. This was a direct result of Marco's failure to exercise reasonable care

in this regard. In this particular, Marco was actively negligent.

The primary negligence was upon Marco. It furnished the soft steel shafts to be ground and case-hardened by Mantel. They were to be returned to Marco for further use by their insertion into the vital parts of the purse seine winch. Upon their proper preparation depended the success or failure of this tuna fishing expedition. Marco knew or should have known by the smallness of the charge for services rendered by Mantel that these shafts had not been case-hardened. It would have been comparatively easy for Marco to have inspected these shafts before they were placed inside the winch. Such an inspection would have been a matter of ordinary and reasonable business practice in the manufacture and assembly of the completed product. By Marco's failure to inspect, the winch broke down twice and the loss was incurred. It cannot be said, as a matter of law, that Mantel was actively negligent in its conduct with reference to these shafts. Since the primary negligence rested upon Marco, it must suffer the consequences. In the main case, such was the import of the verdict of the jury. That verdict has been sustained in the preceding opinion. There seems to be no reason why Mantel should be held as actively or primarily negligent. Since that fact is very apparent, no useful purpose will be accomplished by permitting a new trial when the lack of liability on the part of Mantel has already been established.

Accordingly, the judgment of the trial court granting a new trial is reversed and the case is remanded with instructions to enter a judgment upon the verdict of the jury. It is so ordered.

FINLEY, C. J., WEAVER, ROSELLINI, and McGOVERN, JJ., concur.