[No. 44920.   En Banc.   March 23, 1978.]

WENATCHEE WENOKA GROWERS ASSOCIATION, *Respondent,*
v. KRACK CORPORATION, *Appellant,* PUGET SOUND
ENGINEERING, INC., ET AL,
*Respondents.*

*William H. Mays* and *Joel E. Smith* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for appellant.

*Fortier & Baker, Inc., P.S.*, by *Robert J. Reynolds* and *Mark R. Fortier,* for respondents.

*Daniel F. Sullivan, Gregg L. Tinker,* and *Donovan R. Flora* on behalf of Washington State Trial Lawyers Association, amici curiae.

STAFFORD, J.—This is an appeal from a summary judgment dismissing appellant Krack Corporation's claim for contribution from respondent Food Industries Research and Engineering, Inc. (Food).

Wenatchee Wenoka Growers Association (Wenatchee) leases its refrigerated storage facilities to fruit growers in the Wenatchee Valley. In 1971 Wenatchee retained Food to design an additional controlled atmosphere storage facility and to supervise its installation. Food's design required refrigeration units manufactured by Krack. The Krack units were installed by Puget Sound Engineering (Puget), a subcontractor.

Following installation, the unit manufactured by Krack developed leaks which allowed ammonia gas to escape. The gas caused extensive damage to the apples stored in Wenatchee's warehouse. The refrigeration system as

designed by Food did not contain an automatic device for detecting ammonia leaks although such equipment was available and might have prevented some of the resulting apple damage.

Wenatchee sued Krack and Puget, alleging negligence, breach of warranty and strict liability. Puget filed a third–party claim against Food. Food then sued Krack. Krack responded by asserting a claim for contribution from Food based on Food's alleged defective design of the controlled atmosphere system.

Before trial but after discovery, Food's motion for summary judgment dismissing Krack's contribution claim was granted. After the case had gone to trial but before Wenatchee rested, Krack and Wenatchee settled. Wenatchee's remaining claims were then disposed of, but the record does not clearly disclose the nature of the disposition. Puget then nonsuited Food on the third–party action.

Although somewhat complicated procedurally, the only issue before us concerns the propriety of the summary judgment dismissing Krack's claim for contribution against Food. Krack appeals and urges us to abandon the long–standing rule prohibiting claims for contribution between or among joint tort–feasors. At this time, on this record, and based on the briefs submitted, we are not persuaded the rule should be abandoned.

Krack first suggests contribution between tort–feasors is the natural corollary of the comparative negligence principle expressed in RCW 4.22.010. We agree the comparative concept of RCW 4.22.010 expresses a new public policy in this state. *See also Godfrey v. State,* 84 Wn.2d 959, 530 P.2d 630 (1975). Yet, we are not fully convinced that this comparative concept compels abrogation of the no–contribution rule.

■ Comparative negligence and contribution both represent serious attempts to achieve greater fairness in tort law. But, the underlying policy considerations of each are quite different. *See, e.g.,* Comment, *Comparative Negligence,* 49 Wash. L. Rev. 705 (1974); W. Prosser, *Law of*

*Torts* § 50 (4th ed. 1971); C. R. Heft & C. J. Heft, *Comparative Negligence Manual* § 12.0 (1976); Leflar, *Contribution & Indemnity Between Tortfeasors,* 81 U. Pa. L. Rev. 130 (1932); Reath, *Contribution Between Person Jointly Charged for Negligence—Merryweather v. Nixon,* 12 Harv. L. Rev. 176 (1898).

Comparative negligence is directed at compensating one who has suffered a tort–related loss. Prosser, *Comparative Negligence,* 51 Mich. L. Rev. 465 n.2 (1953). Comparative negligence means comparison of the negligence of the plaintiff and the defendant. *Amend v. Bell,* 89 Wn.2d 124, 570 P.2d 138 (1977); *Bradley v. Maurer,* 17 Wn. App. 24, 29, 560 P.2d 719 (1977). One who has suffered damages is allowed to seek recovery even though his own negligence may have proximately caused the injury complained of. RCW 4.22.010; *Godfrey v. State, supra.*

Contribution, on the other hand, is directed at equitably distributing *between* or *among* tort–feasors the responsibility for paying those damages suffered by the injured party. *See* W. Prosser, *Law of Torts, supra* at 307; Commissioners' Prefatory Note (1939 Act), *Uniform Contribution Among Tortfeasors Act,* 12 U.L.A. 60 (1975). Contribution, unlike comparative negligence, is neither related to the damages an injured party is entitled to receive nor to the question of whether that injured party should receive less than his full damages suffered from a tort–related loss.

In short, allowing the injured party an opportunity to recover *from* the tort–feasor (comparative negligence) and permitting an equitable distribution of damages *between* or *among* joint tort–feasors (contribution) pertain to interests wholly unrelated. Thus, we cannot agree that contribution necessarily follows as the corollary of comparative negligence.

Krack next urges that we follow the lead of other states that have adopted contribution. Yet, it suggests no prototype for our consideration. Given the myriad of issues necessarily raised by adopting the theory of contribution, we are sympathetic with the failure to offer any kind of model

or consistent theory for guidance. The approaches other states have taken to the issues raised by contribution are not only extremely varied, but exceedingly inconsistent.

A prime example of the diversity among the states is reflected in the differing approaches suggested by the Uniform Law Commissioners in the 1939 and 1955 versions of the Uniform Contribution Among Joint Tortfeasors Act, 12 U.L.A. 57–107 (1975). The 1939 version of the Act contained an optional section 2(4) allowing consideration of degrees of fault among joint tort–feasors. 12 U.L.A. 57. On the other hand, the 1955 version abandons the "degree of fault" option in favor of an equitable adjustment among the tort–feasors. 12 U.L.A. 87–88. Several states follow the optional provision of the 1939 Act. *See* Ark. Stat. Ann. § 43–1002; 10 Del. Code Ann. § 6301; Haw. Rev. Stat. 1968 § 663–12; Idaho Code Ann. § 6–803; S.D. Comp. Laws 1967 § 15–8–15; Utah Code Ann. 1953 § 78–27–40(2); Wyo. Stat. Ann. 1957 § 1–7.3(c). Other states have adopted the 1955 version but have retained the "degree of fault" option of the 1939 Act. *See* Fla. Stat. Ann. § 768.31(3); Ore. Rev. Stat. § 18.445. Still others have enacted the 1955 version including the equitable adjustment of damage liability between joint tort–feasors. *See* Alaska Stat. 1962 § 9.16.020; Nev. Rev. Stat. § 17.295.

Other states follow an equal division rule for adjusting damage liability among joint tort–feasors. *See* Ga. Code Ann. § 105–2012; Miss. Code Ann. 1972 § 85–5–5. California, with certain judicially imposed exceptions, follows a "pro rata share" or "equal shares" method for adjusting damage liability between those tort–feasors paying more than a pro rata share of a joint judgment. Cal. Civ. Proc. Code §§ 875–77. New York applies an "equitable share" concept. N.Y.C.P.L.R. § 1402. New Jersey has even another solution. *See* N.J. Stat. Ann. § 2A:53A–1 *et seq.*

Kansas has virtually abolished joint and several liability. Kan. Stat. Ann. § 60–258a. And, New Hampshire and

Vermont arguably have also abolished joint and several liability under their contribution schemes. *See* N.H. Rev. Stat. Ann. § 507:7–a; Vt. Stat. Ann. 1959, Title 12, § 1036.

Even those courts which have judicially abandoned the rule prohibiting contribution between or among joint tort–feasors have had difficulty assessing the magnitude of change thereby generated. For example, both Wisconsin and Maine judicially allowed contribution as early as 1918. *See Ellis v. Chicago & N.W. Ry.,* 167 Wis. 392, 167 N.W. 1048 (1918); *Hobbs v. Hurley,* 117 Me. 449, 104 A. 815 (1918). In 1918, both courts considered the "equal share" or "pro rata" method of apportionment to be judicially warranted. But, both courts subsequently modified their damage distribution rules in favor of a relative fault system. *Bielski v. Schulze,* 16 Wis. 2d 1, 114 N.W.2d 105 (1962); *Packard v. Whitten,* 274 A.2d 169 (Me. 1971). In fact, many courts first considering the issues surrounding contribution focus solely upon the prohibition's theoretical underpinnings, rather than its practical complications. *See, e.g., George's Radio, Inc. v. Capital Transit Co.,* 126 F.2d 219 (D.C. Cir. 1942); *Best v. Yerkes,* 247 Iowa 800, 77 N.W.2d 23 (1956); *Goldman v. Mitchell–Fletcher Co.,* 292 Pa. 354, 141 A. 231 (1928); *Ankeny v. Moffett,* 37 Minn. 109, 33 N.W. 320 (1887).

■ We have examined the various approaches taken by other states with the hope of arriving at the most equitable approach to this factually and legally entangled appeal. Aside from the questions which surround the primary problems of the theory prohibiting contribution, concerns about joint and several liability, and distribution among tort–feasors of the damage liability, Krack also injects the question of products liability into the appeal; that is: should there be contribution between or among joint tort–feasors regardless of the *degree* or *nature* of the tort-feasor's fault? Krack suggests contribution should be permitted not solely between negligent joint tort–feasors, *but also* between joint tort–feasors whose liability to the

injured party is premised in negligence *and* in strict liability theories. Krack refers us to cases originating in New York and Wisconsin.

Turning first to New York we note in *Kelly v. Long Island Lighting Co.*, 31 N.Y.2d 25, 29, 286 N.E.2d 241, 334 N.Y.S.2d 851 (1972) the following language is used in interpreting *Dole v. Dow Chem. Co.*, 30 N.Y.2d 143, 282 N.E.2d 288, 331 N.Y.S.2d 382 (1972):

> The rule as stated in *Dole* now permits apportionment of damages among joint or concurrent tort–feasors regardless of the degree or *nature* of the concurring *fault.*

(Final italics ours.) This language is superficially appealing. Nonetheless, Washington's form of strict liability is based on a *no–fault* concept. *See Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 155, 570 P.2d 438 (1977); *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 147–49, 542 P.2d 774 (1975); *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969); Restatement (Second) of Torts § 402A (1965). We question how *fault* between joint tort–feasors may be allocated when the strictly liable tort–feasor has exercised all possible care. Were we to adopt contribution between a negligent and a strictly liable tort–feasor, an inevitable collision between concepts of fault and no fault necessarily would occur. We are not yet convinced that such a result is sound.

Next, we cannot accept the Wisconsin cases for the sweeping proposition relied upon by Krack. All Wisconsin cases stem from *Dippel v. Sciano,* 37 Wis. 2d 443, 155 N.W.2d 55 (1967), in which the court characterized the Wisconsin concept of strict liability as a variant of *negligence per se.* In fact, the Wisconsin court recently affirmed this characterization in *Powers v. Hunt–Wesson Foods, Inc.,* 64 Wis. 2d 532, 536, 219 N.W.2d 393 (1974):

> Strict liability in this state at least means negligence as a matter of law or negligence per se . . .

Washington is a no–fault state with respect to claims originating under Restatement (Second) of Torts § 402A. The Wisconsin characterization of the section 402A action is

totally alien to the concept as applied in Washington. This significant theoretical disparity precludes us from giving serious consideration to the *Wisconsin* cases which allow contribution between strictly liable joint tort–feasors and between negligent and strictly liable joint tort–feasors.

We do recognize there may be other reasons for allowing contribution among joint tort–feasors. Yet, Krack has not suggested them. On the other hand, Krack's theory of contribution leaves many unanswered questions. For example: (1) should the proposed judicial change be applied retroactively or prospectively; (2) how should plaintiff's right to recover be protected, *e.g.,* should a bifurcated trial be utilized; (3) which apportionment method is more fair, "relative fault" or "pro rata" apportionment; (4) should joint and several liability be abandoned; and (5) what effect would the proposed change have on the current "active–passive" negligence theory of noncontractual indemnity actions? Additionally, this appeal also raises other policy considerations surrounding settlements. For example, how should Krack's settlement, prior to Wenatchee's resting its case, affect the contribution rights between potential joint tort–feasors?

Without viable answers, or possible solutions, to the foregoing questions, we would be abandoning a rule that has existed for over 70 years in favor of an "unknown" which is rife with unresolved complications. At this time and with the complex record before us, we are not persuaded to discard a simple, workable doctrine in favor of a complicated "unknown." But, we neither hold nor mean to suggest that we will reject further consideration of this matter in an appropriate case.

Finally, appellant assigns error to the granting of Food's motion for summary judgment and argues that whether Food's design was a proximate cause of the apple damage presents an issue of material fact. We disagree. This issue would have been material had we been persuaded to allow contribution among joint tort–feasors. Being unpersuaded,

the question of proximate causation is not material. Accordingly, summary judgment was proper.

The trial court is affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.