[No. 44996. En Banc. December 28, 1978.]

SEATTLE–FIRST NATIONAL BANK, *Petitioner*, v. SHORELINE CONCRETE CO., ET AL, *Respondents.*

*Sullivan, Morrow & Longfelder,* by *Daniel F. Sullivan* and *Donovan R. Flora,* for petitioner.

*Reed, McClure, Moceri & Thonn, P.S.,* by *Hugh A. McClure* and *Kathy A. Cochran,* for respondent Dico Corporation.

*James M. Danielson, J. Patrick Aylward,* and *Jeffers & Danielson, P.S.,* for respondent Shoreline Concrete Company.

*Pinckney M. Rohrback* and *Keller, Rohrback, Waldo & Hiscock,* for respondent Cutler–Hammer, Inc.

*Thomas J. McLaughlin, Richard C. Coyle,* and *Keith Gerrard* on behalf of Association of Washington Business, amici curiae.

STAFFORD, J.—This court granted direct review of a trial court order which restricts the liability of multiple tortfeasors to their apportioned fault. We affirm in part, reverse in part and remand for trial.

George Stanford, an employee of Batterman Engineering and Construction Co. (Batterman), was electrocuted when the boom of the truck upon which he was working came in contact with a high–energy power line. The truck was owned and operated by Shoreline Concrete Co. (Shoreline).

Seattle–First National Bank (Sea–1st), as personal representative of the Stanford estate, commenced an action for wrongful death against Shoreline and Dico Corp. (Dico), the manufacturer of the boom. Sea–1st alleged negligent,

reckless and wanton misconduct by Shoreline and additionally asserted strict liability and a warranty claim against Dico.[1] The complaint also prayed for judgment against "any other defendant that might later be joined by way of third–party complaint . . . who might be responsible for decedent's death . . ."

Shoreline and Dico, by third–party complaints, asserted claims for indemnity, contribution or apportionment against Batterman. At this juncture, Batterman moved for a summary judgment of dismissal arguing that the Industrial Insurance Act (RCW 51.04 *et seq.*) barred the third–party claims. Apparently before the hearing on Batterman's motion, Dico was granted leave to add as an additional third–party defendant Cutler–Hammer, Inc. (Cutler), who was the manufacturer of the boom's toggle switch.[2]

The trial court denied Batterman's motion and entered the order for which review is here sought. Insofar as relevant, the order provides that (1) Batterman shall remain a party to the action; (2) the jury shall apportion the "fault" of all parties (plaintiff, defendants and third–party defendants); (3) each defendant and third–party defendant's liability to Sea–1st shall be limited to that party's apportioned "fault"; and (4) any judgment entered against Batterman will be fully satisfied upon proof of Batterman's premium payments into the industrial insurance fund.

Sea–1st sought direct review asserting that the order (1) abolishes the joint and several liability of multiple tort–feasors; (2) improperly directs that Stanford's contributory negligence shall be a damage–reducing factor in a strict liability action; and (3) by retaining Batterman as a party to

---

[1]The strict liability claims were premised upon sections 402A and 402B of the Restatement (Second) of Torts (1965).

[2]We are unable to determine from this record whether Cutler had actually been served with process prior to the hearing on Batterman's summary judgment motion or prior to the entry of the challenged order. However, as will be discussed later, the issues raised by Cutler's answer are identical to those raised by Dico and thus we will assume Cutler was a proper party for all purposes herein.

the action, is inconsistent with Batterman's immunity under the Industrial Insurance Act and thus prejudices the recovery rights of the Stanford estate. For reasons not here relevant, Batterman has not sought review.

The challenged order raises three basic issues. I. Shall the joint and several liability of multiple tort–feasors be abolished? II. In an action based upon a defendant's strict liability, is a plaintiff's contributory negligence a damage–reducing factor? III. Should Batterman, an employer covered by the Industrial Insurance Act, have been retained as a third–party defendant in this action wherein the underlying conduct giving rise to Batterman's liability is its alleged negligence to Stanford, the decedent?

## I
### JOINT AND SEVERAL LIABILITY

All parties agree the challenged order would abolish the joint and several liability of multiple tort–feasors by restricting each tort–feasor's liability to the injured party to that tort–feasor's respective fault. Additionally, the order implicitly requires the injured party to seek recovery from *all* potential tort–feasors in one lawsuit to effectuate full recovery.

This is a radical departure from our traditional rules of liability. Respondents suggest two reasons in support of such a change. First, they urge that joint and several liability should only be imposed upon those multiple tort–feasors who cause a "joint tort." Second, they argue that the recent adoption of comparative negligence (RCW 4.22.010) and the apparent "trend" permitting *contribution among* multiple tort–feasors logically require that we discard joint and several liability. We disagree.

It has long been recognized that the single tort–feasor is liable for all damage for which his tortious conduct is a proximate cause. *See Boeing Co. v. State,* 89 Wn.2d 443, 448, 572 P.2d 8 (1978); *Mason v. Bitton,* 85 Wn.2d 321, 326, 534 P.2d 1360 (1975); *Litts v. Pierce County,* 5 Wn. App. 531, 536–37, 488 P.2d 785 (1971). *See also* W. Prosser,

*Joint Torts and Several Liability,* 25 Cal. L. Rev. 413 (1937); 1 F. Harper & F. James, *The Law of Torts* § 10.1 (1956); W. Prosser, *Law of Torts* § 52 (4th ed. 1971); 2 Restatement (Second) of Torts §§ 434(2), 439 (1965). In the case of multiple tort–feasors the principle is the same. That is, each multiple tort–feasor is personally liable for any injury for which his tortious act is *a* proximate cause. *See* W. Prosser, *Law of Torts* §§ 46, 47; 1 F. Harper & F. James, *The Law of Torts* § 10.0.

Multiple tort–feasors are often characterized as "joint", "concurrent", or "successive" when differentiating between the *type of harm* caused and the *nature of the duty owed.* Joint tort–feasors are those who have acted in common or who have breached a joint duty. *White Pass Co. v. St. John,* 71 Wn.2d 156, 158, 427 P.2d 398 (1967); *Young v. Dille,* 127 Wash. 398, 404, 220 P. 782 (1923); 1 F. Harper & F. James, *The Law of Torts* § 10.1. Concurrent tort–feasors are those whose independent acts concur to produce the injury. *See Boeing Co. v. State, supra* at 448; *Mason v. Bitton, supra* at 326; *Litts v. Pierce County, supra* at 534–37. Significantly, the *harm* caused by both joint and concurrent tort–feasors is *indivisible.* The distinguishing factor between these types of tort–feasors is the duty breached. Joint tort–feasors breach a joint duty whereas concurrent tort–feasors breach separate duties.[3]

Since the harm caused by both joint and concurrent tort–feasors is indivisible, similar liability attaches. We have long held that such tort–feasors are each liable for the entire harm caused and the injured party may sue one or all to obtain full recovery. While respondent correctly notes that such liability at *common law applies only to joint tort–*

---

[3]The concept of "successive" tort–feasors applies when none of the multiple tort–feasors could have caused the whole harm suffered and where the harm caused is clearly divisible. *See Smith v. Rodene,* 69 Wn.2d 482, 418 P.2d 741 (1966); *DeNike v. Mowery,* 69 Wn.2d 357, 418 P.2d 1010 (1966); *Snavely v. Goldendale,* 10 Wn.2d 453, 117 P.2d 221 (1941). *See also* 2 Restatement (Second) of Torts § 433(A) (1965). The concept will not be discussed further because it has not been raised in the instant case.

feasors, the indivisible nature of the harm caused by both of these tort–feasors requires, at a minimum, that each be wholly responsible for the entire harm caused.

■ While the indivisibility of the harm caused warrants imposition of entire liability upon those tort–feasors, sound policy reasons also support application of the procedural, or several, aspect of the liability rule. The cornerstone of tort law is the assurance of full compensation to the injured party. To attain this goal, the procedural aspect of our rule permits the injured party to seek full recovery from any one or all of such tort–feasors. So long as each tort–feasor's conduct is found to have been *a* proximate cause of the *indivisible* harm, we can conceive of no reason for relieving that tort–feasor of his responsibility to make full compensation for all harm he has caused the injured party. What may be equitable *between multiple tort–feasors* is an issue totally divorced from what is fair to the injured party. Thus, we cannot accept respondents' suggestion that joint and several liability is appropriate only for "joint" tort–feasors.

Next, we examine whether comparative negligence necessitates a limitation upon a plaintiff's right to seek full compensation. In short, does comparative negligence dictate that joint and several liability be abandoned?

■ Comparative negligence represents an attempt to achieve greater fairness in tort law. *Wenatchee Wenoka Growers Ass'n v. Krack Corp.,* 89 Wn.2d 847, 849–50, 576 P.2d 388 (1978). It operates in favor of an injured party by allowing, rather than barring, recovery by one who is contributorially negligent. *Wenatchee Wenoka Growers Ass'n v. Krack Corp., supra* at 850; *Godfrey v. State,* 84 Wn.2d 959, 965, 530 P.2d 630 (1975); RCW 4.22.010. While comparative negligence *increases* the chance of recovery by one who is contributorially negligent, respondents now suggest that we *restrict* these rights under the rubric of comparative negligence. But, from the perspective of the recovery rights of the injured party, comparative negligence and the

suggested abolition of joint and several liability are completely inconsistent.

A second reason convinces us that comparative negligence does not require abolition of joint and several liability. Four state legislatures appear to have modified the rule when enacting comparative negligence–contribution statutes. *See* Kan. Stat. Ann. § 60–258a; Vt. Stat. Ann. Title 12 § 1036; N.H. Rev. Stat. Ann. § 507:7–a; Nev. Laws § 41.141. Had our legislature intended a similar change it could have so provided, but it did not. As Professor Schwartz notes in his treatise on comparative negligence:

> The concept of joint and several liability of tortfeasors has been retained under comparative negligence, *unless the statute specifically abolishes it,* in all states that have been called upon to decide the question.

(Italics ours.) V. Schwartz, *Comparative Negligence* § 16.4, at 253 (1974). *See, e.g., American Motorcycle Ass'n v. Superior Court,* 20 Cal. 3d 578, 578 P.2d 899, 146 Cal. Rptr. 182 (1978); *Kelly v. Long Island Lighting Co.,* 31 N.Y.2d 25, 286 N.E.2d 241, 334 N.Y.S.2d 851 (1972); *Packard v. Whitten,* 274 A.2d 169 (Me. 1971); *Bielski v. Schulze,* 16 Wis. 2d 1, 114 N.W.2d 105 (1962).

Finally, we disagree with respondents' contention that comparative negligence, as applied in this state, is inconsistent with joint and several liability. Joint and several liability is premised upon causation and the indivisibility of the *harm* caused. The simple feasibility of apportioning *fault* on a comparative negligence basis, between plaintiff and defendant, does not render an indivisible injury "divisible" for purposes of joint and several liability. That it may be possible to assign a percentage figure to the relative culpability of multiple tort–feasors does not detract from the preliminary fact that *each* tort–feasor's conduct was *a* proximate cause of an entire indivisible injury. *See also American Motorcycle Ass'n v. Superior Court, supra.*

Moreover, that the injured party's "fault" is now determined under comparative negligence does not require abolition of the joint and several liability rule. In many

instances the injured party may be completely free of responsibility. Yet, if the current rule is abandoned, a completely faultless plaintiff could be forced to bear a portion of the loss if any tort–feasor should prove financially unable to satisfy his proportionate share of the damages. This is incompatible with the compensatory purpose of tort law.

Finally, even when a plaintiff is partially at fault for his own injury, his culpability is not of the same nature as defendant's. A plaintiff's negligence relates to a failure to use due care *for his own protection* whereas a defendant's negligence relates to a failure to use due care *for the safety of others*. While a plaintiff's self–directed negligence may justify reducing his recovery in proportion to his degree of *fault,* the fact remains that such conduct, unlike that of a negligent defendant, is not tortious. *See American Motorcycle Ass'n v. Superior Court, supra* at 906; W. Prosser, *Law of Torts* § 65.

Consequently, we are not persuaded that this state's recent adoption of comparative negligence compels a change in our recognition of joint and several liability.

■ Further, we do not agree that the rather noticeable "trend" toward allowing contribution *between or among* multiple tort–feasors necessarily requires a change in our rule. Contribution is directed at equitably distributing *between or among multiple tort–feasors* the responsibility for paying damages suffered by the injured party. *Wenatchee Wenoka Growers Ass'n v. Krack Corp., supra* at 850. It is a remedial scheme which operates exclusively between or among tort–feasors. It has no effect upon the *injured party's initial right to recover from* the multiple tort–feasors. With few exceptions, even those states which have adopted some form of contribution *between or among* multiple tort–feasors recognize that this device for equitable readjustment has no effect upon the initial and total liability to the injured party. *See, e.g., Bielski v. Schulze, supra; Packard v. Whitten, supra; Kelly v. Long Island Lighting Co., supra.* Thus, while we might agree that contribution may represent a more equitable approach to

resolving inequities which may result *between or among multiple tort–feasors* by virtue of the joint and several liability rule, we must note that contribution has rarely been used as a vehicle for restricting an injured party's right to seek full compensation from whichever tort–feasor he may elect to sue.

For the reasons outlined above, we hold that the trial court erred in entering the challenged order insofar as it purports to abolish the joint and several liability of joint and concurrent tort–feasors. We reverse the trial court's order insofar as it: (1) directs the jury to apportion the "fault" of *all* defendants and third–party defendants vis–a–vis Sea–1st; and (2) limits Sea–1st's recovery against all defendants and third–party defendants to that portion of each tort–feasor's apportioned "fault". As personal representative of the Stanford estate, Sea–1st was entitled to seek full recovery from those alleged tort–feasors it had chosen to sue, *e.g.*, Shoreline and Dico. Insofar as Sea–1st asserted no claim against either Batterman or Cutler,[4] the order improperly restricts Sea–1st's recovery rights *and* interferes with its right to choose the tort–feasors from whom it will seek recovery. On remand, Sea–1st need only show that Shoreline and Dico's tortious conduct were each a proximate cause of Stanford's injury in order to obtain full recovery from either or both.

## II
### Stanford's Contributory Negligence as a Damage–Reducing Factor

We have already indicated that Sea–1st is entitled to recover a full judgment from either Dico or Shoreline or both if Sea–1st shows that the tortious conduct of each was *a* proximate cause of Stanford's death. Of course, the amount of damages recoverable will be reduced by Stanford's contributory negligence in an action premised

---

[4]Because the order improperly interferes with Sea–1st's right to choose those tort–feasors it desires to proceed against, we need not discuss many of the myriad of issues also raised by the order insofar as Batterman and Cutler are concerned.

upon the negligence of Shoreline and Dico. *See Lamborn v. Phillips Pac. Chem. Co.*, 89 Wn.2d 701, 709, 575 P.2d 215 (1978); *Godfrey v. State, supra* at 965; RCW 4.22.010. In this respect, the trial court's order correctly requires the jury to determine the fault, or contributory negligence, attributable to Stanford.

Respondents suggest that we expand the trial court's order and permit Stanford's fault to be a damage–reducing factor in actions *not* sounding in negligence. Petitioner maintains that the challenged order erroneously permits a plaintiff's *fault* to be compared, for reduction of damages, with a tort–feasor's conduct premised upon no–fault strict liability under Restatement § 402A. Petitioner thus argues that if a plaintiff's *fault* may be considered as a damage–reducing factor in strict liability actions it must amount to the voluntary and unreasonable act of encountering a known risk by the injured party, *e.g.*, assumption of risk. *See* Restatement (Second) of Torts § 402A, comment *n* (1965).

We need not decide whether a plaintiff's conduct may be a damage–reducing factor in an action premised upon Restatement § 402A. The trial court's order is carefully limited to those actions in which *both* the plaintiff and the tort–feasors were causally *at "fault" or negligent*. As limited, the order does not direct that comparisons of "fault" be made in an action *not* sounding in negligence. Petitioner does not contend that a plaintiff's contributory negligence may not be a damage–reducing factor in a negligence action. To this extent, petitioner is not aggrieved by the trial court's limited order and we will not consider petitioner's arguments further. *See* RAP 3.4; *State ex rel. Simeon v. Superior Court*, 20 Wn.2d 88, 145 P.2d 1017 (1944).

We also do not consider respondents' suggestion that a plaintiff's "fault" should be a damage–reducing factor in a strict liability action. Respondents, having failed to raise this issue before the trial court, are precluded from raising it for the first time on appeal. *See Martin v. Municipality*

*of Metro. Seattle,* 90 Wn.2d 39, 42, 578 P.2d 525 (1978). *King County Water Dist.: 75 v. Seattle,* 89 Wn.2d 890, 905, 577 P.2d 567 (1978).

## III
### INDUSTRIAL INSURANCE ACT

Finally, we examine that portion of the challenged order which directs that Batterman, decedent's employer, shall remain a party to the action. Two issues are involved: (1) whether Batterman's "fault" may be considered in the reduction of damages sought by Sea–1st; and (2) whether the third–party claims asserted against Batterman by Dico, Shoreline and Cutler are allowable under the Industrial Insurance Act (RCW 51.04 *et seq.*) (Act). Both issues involve the scope of an employer's immunity under the Act, thus we consider them together.

RCW 51.04.010 provides in part:

The state of Washington . . . declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen . . . is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

RCW 51.32.010 also provides in part:

Each workman injured in the course of his employment, or his family or dependents in case of death of the workman, shall receive compensation in accordance with this chapter, and, except as in this title otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever . . .

■ We have consistently held that when an employer, such as Batterman, pays its industrial insurance premiums pursuant to the Act the employer may no longer be looked to for recourse. The fund, created to provide for losses expected to occur, is the sole source of recovery. *See Kelley v. Howard S. Wright Constr. Co.,* 90 Wn.2d 323, 582 P.2d

500 (1978); *Ledesma v. A.F. Murch Co.*, 87 Wn.2d 203, 550 P.2d 506 (1976); *West v. Zeibell*, 87 Wn.2d 198, 550 P.2d 522 (1976); *Greenleaf v. Puget Sound Bridge & Dredging Co.*, 58 Wn.2d 647, 364 P.2d 796 (1961); *Stertz v. Industrial Ins. Comm'n*, 91 Wash. 588, 158 P. 256 (1916); *see also Olch v. Pacific Press & Shear Co.*, 19 Wn. App. 89, 573 P.2d 1355 (1978); *Montoya v. Greenway Aluminum Co.*, 10 Wn. App. 630, 519 P.2d 22 (1974).

With certain specified exceptions, the Act abolishes judicial jurisdiction over *all* civil actions for personal injuries arising between employees and the employers. In its place the State has provided employees with sure and certain relief regardless of the fault of due care of either the employer or employee. In effect, the Act "immunizes", from judicial jurisdiction, all tort actions which are premised upon the "fault" of the employer vis-a-vis the employee. The determination to abolish judicial jurisdiction over such "immunized" conduct was a legislative policy decision. The wisdom of that decision is not a proper subject of our review.

We thus hold that under the Act the courts have no jurisdiction over an action premised upon or necessarily involving this "immunized" area of tort law. Accordingly, Batterman's fault may not be considered in the reduction of Sea-1st's damages. Further, the impleading of Batterman by third parties cannot be used as a device to permit the court to assume jurisdiction over such conduct.

A different situation is present, however, where an employer voluntarily assumes an independent duty or obligation to the third party. *See Olch v. Pacific Press & Shear Co., supra* at 92-93; *Montoya v. Greenway Aluminum Co., supra* at 631-32; *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.*, 1 Wn. App. 1035, 1040-41, 467 P.2d 386 (1970). *See also* 2A A. Larson, *The Law of Workmen's Compensation* §§ 76.10, 76.30 *et seq.* (1976). Nonetheless, for these actions to be judicially cognizable, the third party's theory of *employer* liability cannot stem from conduct "immunized" by the Act, *e.g.*, that which necessarily involves the

employer's conduct vis–a–vis the employee. Any such action must be based solely upon an independent obligation exist-ing between the employer and the third–party claimant.

We now examine whether any of the third–party claims asserted against Batterman arise from such independent obligations over which our courts may assume jurisdiction.

The third–party indemnity claims of Dico, Shoreline and Cutler were alleged to arise from the active negligence of Batterman, based upon a theory of noncontractual indemnity. *See Herberg v. Swartz,* 89 Wn.2d 916, 926, 578 P.2d 17 (1978); *Deutsch v. West Coast Mach. Co.,* 80 Wn.2d 707, 718, 497 P.2d 1311 (1972); *Reefer Queen Co. v. Marine Constr. & Design Co.,* 73 Wn.2d 783, 787, 440 P.2d 453 (1968); *Rufener v. Scott,* 46 Wn.2d 240, 242, 280 P.2d 253 (1955). Insofar as these claims are based upon the "immunized" conduct of Batterman vis–a–vis decedent Stanford, they are not judicially cognizable. *See* RCW 51.04.010; 2A A. Larson, *The Law of Workmen's Compensation* § 76.44.

Shoreline and Dico also asserted third–party claims for contribution or for an apportionment of their liability based upon the "fault" of all defendants and third–party defendants. These claims are not judicially cognizable insofar as they are delictual in nature and necessarily arise from the underlying "immunized" conduct of Batterman vis–a–vis Stanford. *See* 2A A. Larson, *The Law of Workmen's Compensation* § 76.20.

Shoreline's trial memorandum on summary judgment makes a solitary reference to an "indemnity" claim based upon an asserted independent *duty of due care* owed to it by Batterman. *See generally* 2A A. Larson, *The Law of Workmen's Compensation* § 76.43. However, Shoreline did not argue the source of this duty either at trial or here. We will not consider issues apparently abandoned at trial and clearly abandoned in this court. *See Lassila v. Wenatchee,* 89 Wn.2d 804, 576 P.2d 54 (1978); *State v. Wood,* 89 Wn.2d 97, 569 P.2d 1148 (1977). Moreover, our review of Shoreline's trial memorandum reveals that the

asserted "indemnity" claim was actually based upon Batterman's alleged negligence with respect to decedent Stanford. This, of course, is conduct "immunized" by our statute and not cognizable by the judiciary.

Since none of the third–party claims asserted against Batterman arose from conduct independent of that "immunized" by the Act, we hold that the trial court erred in directing that Batterman remain a party to the third–party actions.

■ Despite respondents' argument to the contrary, neither the due process nor equal protection clauses of our state and the federal constitutions prevent a change in the common law as it previously existed. No one has a vested right in an existing law which precludes its amendment or repeal. Also, no one has a vested right in the fact that a legislature has declined to legislate on a particular subject. *Godfrey v. State*, 84 Wn.2d 959, 962–63, 530 P.2d 630 (1975); *Henry v. McKay*, 164 Wash. 526, 3 P.2d 145, 77 A.L.R. 1025 (1931). The Fourteenth Amendment does not curtail a state's power to amend its laws, common or statutory, to conform to changes in public policy. *Godfrey v. State, supra* at 963; *Henry v. McKay, supra; Shea v. Olson*, 185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998 (1936). In the instant case, both strong public policy and historical reasons justify the legislative restriction of such third–party actions against employers. At the very least, the restriction *completes* the employer's protection against liability for "immunized" conduct. The legislative prohibition against such actions violates neither due process of law nor equal protection of law.

In summary, we hold: (1) the trial court should have granted a summary judgment dismissing Batterman; and (2) the trial court is reversed insofar as its order abolishes the joint and several liability of joint and concurrent tortfeasors. On remand Sea–1st need only establish that the tortious conduct of Shoreline and Dico was *a* proximate cause of the decedent's death in order to recover in full the damages proven against either or both.

The trial court's order properly directed the jury to determine Stanford's contributory fault in Sea–1st's negligence actions against Shoreline and Dico.

Accordingly, we reverse in part, affirm in part, and remand the cause for trial.

WRIGHT, C.J., and ROSELLINI, HAMILTON, HOROWITZ, and DOLLIVER, JJ., concur.

HICKS, J. (concurring in part; dissenting in part)—I concur with Part I of the court's opinion. Regarding Part II of the opinion, I do not quarrel with the majority's reason for refusing to consider the issue of contributory fault. Nonetheless, because this case is being remanded for a new trial, I believe it would have been appropriate to discuss contributory fault as a damage–reducing factor in a strict liability claim in order to assist the trial court at the new trial in this area of the law. *Cf. Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 570 P.2d 438 (1977). *See Daly v. General Motors Corp.*, 20 Cal. 3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380 (1978).

I do disagree with Part III of the majority opinion insofar as it extends an employer's "immunity" from suit under the Industrial Insurance Act (RCW 51) beyond actions brought by the employees of such employer. The majority characterizes the third–party claims asserted against Batterman by Dico, Shoreline, and Cutler as involving "the scope of an employer's immunity under the Act." The court's opinion sweeps far too broadly. There is no necessity to "hold that under the Act [RCW 51] the courts have no jurisdiction over an action premised upon or necessarily involving this 'immunized' area of tort law." Rather than analyzing third–party actions against an employer in terms of "immunization" *under the act,* I would examine such claims to ascertain the existence of an independent duty running from the employer to the third party. If there is none, there is no basis for an action against the employer. If there is such a duty to a third party which the employer has breached,

nothing in RCW 51.04.010 provides any immunization to the employer from an action by the third party.

Although a few of this court's prior opinions contain broad dicta arguably to the contrary, until today's decision the only area of tort law "immunized" by the act of this court was that involving actions against an employer by its employees, their family or dependents. This limitation was emphasized in *Latimer v. Western Mach. Exch.*, 42 Wn.2d 756, 758, 259 P.2d 623 (1953), wherein the court stated:

> The only causes of action which are withdrawn from private controversy . . . are those of workmen. RCW 51.04.010 (*cf.* Rem. Rev. Stat., § 7673).

An examination of RCW 51.04.010, the statute upon which the employer's claim of immunity must rest, supports such an interpretation:

> The state of Washington . . . declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for *workers* . . . is hereby provided . . . to the exclusion of every other remedy, proceeding or compensation . . . and to that end all civil actions and civil causes of action *for such personal injuries* and all jurisdiction of the courts of the state over such causes are hereby abolished . . .

(Italics mine.)

The majority states: "[w]e have consistently held that when an employer, such as Batterman, pays its industrial insurance premiums pursuant to the Act the employer may no longer be looked to for recourse." To support this statement the majority cites several cases from this court, as well as two decisions of the Court of Appeals. The cases from this court hold only that the *employee* (family or dependents), may not look to the *employer* for recourse. These cases do not address the issue of third–party claims against the employer. As was stated in *Latimer v. Western Mach. Exch., supra,* the act withdraws from private controversy only those causes of action between employer and employee. *See also Stertz v. Industrial Ins. Comm'n,* 91 Wash. 588, 158 P. 256 (1916); *Zenor v. Spokane & I.E.*

*R.R.*, 109 Wash. 471, 474, 186 P. 849 (1920).

In support of its position that an area of law has been "immunized" by the act, the majority also cites *Olch v. Pacific Press & Shear Co.*, 19 Wn. App. 89, 573 P.2d 1355 (1978), and *Montoya v. Greenway Aluminum Co.*, 10 Wn. App. 630, 519 P.2d 22 (1974). I do not find the analysis of these two cases to be persuasive. I would adopt the reasoning set forth in the dissenting opinion in *Olch v. Pacific Press & Shear Co.*, *supra* at page 98 (Swanson, J., dissenting). *Montoya* at page 634 quotes, out of context, a statement originating from *Stertz v. Industrial Ins. Comm'n*, *supra* at page 595. That statement, "[w]hen the employer, for his part, pays his share into this fund, all obligation on his part *to anybody* is ended", is set forth in context below:

> To resume, ours is not an employer's liability act. It is not even an ordinary compensation act. It is an industrial insurance statute. Its administrative body is entitled the industrial insurance commission. All the features of an insurance act are present. Not only are all remedies between master and servant abolished, and, in the words of the statute, all phases of them withdrawn from private controversy, but the employee is no longer to look to the master even for the scheduled and mandatory compensation. He must look only to a fund fed by various employers. When the employer, for his part, pays his share into this fund, all obligation on his part to anybody is ended. . . .
>
> To sum up, our act positively ends the "jurisdiction of the courts," on "all phases" of master and servant liability.

*Stertz v. Industrial Ins. Comm'n*, *supra* at 594–95. The statement regarding the scope of an employer's obligation clearly refers only to the employer–employee relationship, not to the relationship between the employer and a third party.

Although the results reached in both *Olch* and *Montoya* may be correct, the analysis employed to reach these results was flawed. Similarly, the majority's analysis in the instant case is faulty. A more cogent rule is set forth in 2A A.

Larson, *Law of Workmen's Compensation* § 76.00 (1976), as follows:

> When the third party, in a suit by the employee, seeks recovery over against a contributorily negligent employer, contribution is ordinarily denied on the ground that the employer cannot be said to be jointly liable in tort to the employee because of the operation of the exclusive–remedy clause. But if the employer can be said to have breached an independent duty toward the third party, or if there is a basis for finding an implied promise of indemnity, recovery in the form of indemnity may be allowed. The right to indemnity is clear when the obligation springs from a separate contractual relation, such as an employer–tenant's express agreement to hold the third–party landlord harmless, or a bailee's obligation to indemnify a bailor, or a contractor's obligation to perform his work with due care; but the case is much less clear, and has produced a sharp split of opinion, when it rests upon the theory that a "primary" wrongdoer impliedly promises to indemnify a "secondary" wrongdoer.

Rather than creating "immunized" areas of law, not envisioned by the legislature in adopting or amending the workmen's compensation act, this court should focus upon the relationship between the third party and the employer. If an independent duty to the third party is breached by an employer, there is no reason, theoretical or otherwise, to absolve the employer from liability under RCW 51. No quid pro quo exists between the employer and the third party as exists between the employer and its employee. *See* 2A A. Larson, *Law of Workmen's Compensation* § 76.52 (1976); *Olch v. Pacific Press & Shear Co., supra* at 103 (Swanson, J., dissenting).

Rather than refusing to recognize the third–party claims asserted against Batterman because they arose from conduct "immunized" by the act, I would hold that no obligation, contractual or otherwise, existed between the parties upon which to base a cause of action for indemnity. *Cf.*

*Davis v. Niagara Mach. Co.,* 90 Wn.2d 342, 581 P.2d 1344 (1978).

UTTER and BRACHTENBACH, JJ., concur with HICKS, J.