FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 19 2018

for CHIEF JUSTICE

This opinion was filed for record

at 8:00 AM on 7-19-18

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BRANDON APELA AFOA, | ) | No. 94525-0 |
| | ) | |
| | ) | |
| Respondent/Cross-Petitioner, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| PORT OF SEATTLE, | ) | |
| | ) | Filed ___ JUL 19 2018 |
| Petitioner/Cross-Respondent. | ) | |
| | ) | |
| | ) | |

GONZÁLEZ, J.—Brandon Afoa was severely injured in an accident while working at the Port of Seattle (Port) for a cargo company. He sued the Port on the theory that it had retained sufficient control over his work to have a duty to provide him a safe place to work. Among other things, the Port argued that several airlines that were not parties to the lawsuit were at fault. A jury found that Afoa suffered $40 million in damages and apportioned fault between him, the Port, and the airlines. In Washington, tortfeasors are usually liable only for their proportionate share of the damages they cause. Afoa argues that the Port is liable for both its portion and the airlines' portion. The primary question for review is whether the jury's verdict warrants finding the Port is vicariously liable for the airlines'

negligence, justifying the imposition of joint and several liability on the Port. We hold that RCW 4.22.070(1)(a) does preserve joint and several liability when a defendant is vicariously liable for another's fault. Whether vicarious liability exists, however, is a factual question. Here, the jury's findings do not support the conclusion that the Port is vicariously liable for the airlines' fault.

Afoa's suit was initially dismissed on summary judgment, but in *Afoa v. Port of Seattle*, 176 Wn.2d 460, 296 P.3d 800 (2013) (*Afoa* I), we reversed and remanded. In the meantime, Afoa brought a separate action for the same injuries against several airlines, which a federal court dismissed on summary judgment. Afoa did not appeal the dismissal of that suit. Afoa's original lawsuit against the Port went to trial. Over Afoa's objection, the airlines were named as nonparties, and the Port asserted an "empty chair defense" blaming the airlines for Afoa's injuries. The jury returned a multimillion dollar verdict for Afoa and apportioned fault among Afoa, the Port, and the nonparty airlines.

We granted review to consider issues of allocation of fault to a nonparty and the assertion of an empty chair defense.

Afoa now argues that the Port and the airlines are jointly and severally liable because the Port's duty was nondelegable and the airlines were the Port's agents under RCW 4.22.070, even though the jury was not explicitly asked to make that finding. While the Port concedes that its duty to provide a safe workplace was

2

nondelegable, it urges us to uphold the judgment because it contends it is not responsible for the airlines' fault. The airlines also had a duty to provide a safe work site, and we assume, without deciding, that duty was also nondelegable. *See, e.g.*, Clerk's Papers (CP) at 4811 (jury instruction explaining airlines have "a duty to ensure compliance with applicable safety regulations"); *see also Afoa* I, 176 Wn.2d at 495. We reverse the Court of Appeals and affirm the trial court.

BACKGROUND

Afoa worked as a baggage handler at the Seattle-Tacoma International Airport (Airport). Afoa was employed by Evergreen Aviation Ground Logistics Enterprise Inc. (EAGLE), which contracted with four airlines to provide ground services, such as loading and unloading cargo.[1] While driving a luggage vehicle, Afoa lost control and crashed into a piece of equipment that fell and severely injured him. Afoa's employer, EAGLE, was not "at fault" for purposes of RCW 4.22.070.[2]

After the accident, Afoa sued the Port. He alleged that the Port retained control over EAGLE and was responsible for his injuries because the Port violated

---

[1] EAGLE contracted with China Airlines LTD, Hawaiian Airlines Inc., EVA Airways Corporation, and British Airways PLC. The relationship between the Port and the airlines is highly regulated under federal law, which makes these relationships different from most work sites in the state. In fact, the Port is prohibited from controlling certain aspects of airline operations. *See, e.g.*, 14 C.F.R. pts. 139, 121.

[2] Employers who are immune from liability under Washington's Industrial Insurance Act are not considered "at fault" for purposes of apportioning liability. RCW 4.22.070(1) ("except entities immune from liability to the claimant under Title 51 RCW").

3

its nondelegable duties under the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, and the common law. The trial court granted summary judgment for the Port on the ground that Afoa was not the Port's employee. Afoa appealed and also brought a separate lawsuit against the four airlines that had contracted with EAGLE under the same theory he pursued against the Port in the original case. The separate action was removed to federal court and stayed pending Afoa's appeal in this court. We reversed summary judgment, holding "that a jobsite owner who exercises pervasive control over a work site should keep that work site safe for all workers." *Afoa* I, 176 Wn.2d at 481. We were not asked to rule on whether the Port was potentially subject to joint and several liability with nonparty airlines.

After we decided *Afoa* I, Afoa moved to amend his complaint in federal court against the airlines to add the Port as a defendant. His motion was denied. Subsequently, the federal court granted the airlines' motions for summary judgment because Afoa failed to cite WISHA regulations applicable to the airlines and to provide factual allegations sufficient to conclude the airlines retained control over Afoa's work.

On remand and over objection, the Port moved to amend its answer and assert an empty chair defense that the airlines that contracted with Afoa's employer shared fault for Afoa's injuries. A jury found that the Port retained control over

the independent contractor EAGLE's work, which gave rise to a duty of care to Afoa.

The jury found Afoa suffered $40 million in damages and apportioned fault to the parties: 25.0 percent to the Port, 0.2 percent to Afoa, and equally divided the remaining 74.8 percent among the four airlines. The trial court, pursuant to the jury's allocation, entered judgment against the Port for $10 million.

On review, Afoa raised three arguments to the Court of Appeals: first, that the Port had a nondelegable duty to provide a safe workplace, and thus no fault allocation was permitted, and the Port was jointly and severally liable for the judgment minus Afoa's 0.2 percent of fault; second, that the trial court abused its discretion in allowing the Port to assert an empty chair defense; and third, that the dismissal of Afoa's claims prevented the Port from claiming the air carriers were responsible for the accident on a res judicata theory.

The Court of Appeals held that the Port had a nondelegable duty and was therefore vicariously liable for the airlines' fault. The Court of Appeals remanded for the trial court to enter judgment against the Port for 99.8 percent of Afoa's damages. *Afoa v. Port of Seattle*, 198 Wn. App. 206, 234, 393 P.3d 802 (2017) (*Afoa* II). Consequently, Afoa's other arguments were not addressed. The Port appealed. Afoa cross appealed, arguing the trial court abused its discretion under CR 12(i) by allowing the Port to assert an empty chair defense late in the case and

the trial court erred because the Port was bound by the federal court's summary judgment ruling in favor of the airlines.[3] We granted review of the issue of allocation of fault to the nonparty airlines and Afoa's contingent issues concerning the Port's assertion of an empty chair defense.[4]

ANALYSIS

I. *Allocation of Fault and Nondelegable Duties*

The first question this court must answer is whether the trial court erred in permitting the jury to allocate fault to the nonparty airlines. Whether this was error is a question of law. We review issues of statutory interpretation and alleged errors of law de novo. *Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 592, 278 P.3d 157 (2012) (citing *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001)).

In the 1986 tort reform act, the legislature generally abrogated the common law rule of joint and several liability. *See generally* LAWS of 1986, ch. 305; RCW 4.22.030. The legislature left no doubt as to its intent—proportionate liability "has now become the rule." *Kottler v. State*, 136 Wn.2d 437, 443, 963 P.2d 834 (1998).

---

[3]

> Nonparty at Fault. Whenever a defendant . . . intends to claim for purposes of RCW 4.22.070(1) that a nonparty is at fault, such claim is an affirmative defense which shall be affirmatively pleaded by the party making the claim. The identity of any nonparty claimed to be at fault, if known to the party making the claim, shall also be affirmatively pleaded.

CR 12(i) (boldface omitted).

[4] We did not grant review of issues related to federal preemption and the jury instructions' statements of the law. *Afoa* II, 198 Wn. App. at 216-29, *review granted*, 189 Wn.2d 1015 (2017).

"RCW 4.22.070, the centerpiece of the 1986 amendatory package, requires all liability be apportioned unless a listed exception applies in which case joint and several liability is retained." *Id.*

Under the rule of proportionate liability, fact finders assign percentages of "fault" attributable to each party and relevant nonparty, including plaintiffs, whose negligence or certain other categories of culpable conduct constitutes a legal cause of a plaintiff's injury. *See* RCW 4.22.015 (defining "fault"). In cases where a nonparty is allegedly at fault, the jury may be asked to allocate fault to the empty chair at the trial court's discretion. CR 12(i). The burden of proving an empty chair's fault is on the party asserting the nonparty's fault. *Mailloux v. State Farm Mut. Auto. Ins. Co.*, 76 Wn. App. 507, 514-15, 887 P.2d 449 (1995); *see also* Stewart A. Estes, *The Short Happy Life of Litigation Between Tortfeasors: Contribution, Indemnification and Subrogation After Washington's Tort Reform Acts*, 21 SEATTLE U. L. REV. 69, 80 (1997). Here, at trial, the Port successfully met its burden of proving the empty chair airlines' partial responsibility for Afoa's injuries. The trial court did not err in allowing the jury to allocate fault to the nonparty airlines.

Allocation of fault is an "inherently factual" question for the jury. *Edgar v. City of Tacoma*, 129 Wn.2d 621, 627, 919 P.2d 1236 (1996). When the jury apportions fault, "[t]he sum of the percentages of the total fault attributed to at-

fault entities shall equal one hundred percent." RCW 4.22.070(1). The parties bear the responsibility of paying for the damages in proportion to the fault respectively assigned to them, unless an exception applies.

Afoa argues that the Port should be responsible for the airlines' apportioned damages because the Port, "as the entity best able to control safety" at the Airport, "cannot shift any part of its nondelegable duty to the airlines." Supp'l Br. of Resp't at 16 n.43. When an exception to the general rule of proportionate liability applies, joint and several liability is retained. *Kottler*, 136 Wn.2d at 443. Joint and several liability may exist if multiple entities were acting in concert or if an entity was "acting as an agent or servant" of another entity. RCW 4.22.070(1)(a). As discussed below, Afoa did not raise the agency exception until it was too late.[5] Except in specifically recognized areas, joint and several liability does not apply automatically—the RCW 4.22.070 exceptions must apply by operation of fact and law.[6]

RCW 4.22.070 is clear and unambiguous. *Clark v. Pacificorp*, 118 Wn.2d 167, 181, 822 P.2d 162 (1991). It "had the effect of generally abolishing joint and several liability for concurrent negligence." *Gilbert H. Moen Co. v. Island Steel*

---

[5] Afoa has abandoned his argument that the Port and airlines were "acting in concert" under RCW 4.22.070. Chapter 4.22 RCW does not define "acting in concert," but we have held that the legislature intended the term to mean two or more people consciously acting together in an unlawful manner. *Kottler*, 136 Wn.2d at 448-49.

[6] The statute excludes from its reach three causes of action not involved here. RCW 4.22.070(3).

8

*Erectors, Inc.*, 128 Wn.2d 745, 760, 912 P.2d 472 (1996). We must determine if joint and several liability attaches to a party violating its concurrent nondelegable duty to maintain a safe work site for all workers under WISHA and common law.

A. The Port's Nondelegable Duty Did Not Give Rise to Joint and Several Liability

Under some circumstances, jobsite owners may have a duty of care analogous to that of an employer or general contractor. *See Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 123, 125, 52 P.3d 472 (2002); *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 334, 582 P.2d 500 (1978). A jobsite owner or general contractor will have this duty only if it maintains a sufficient degree of control over the work. *Kamla*, 147 Wn.2d at 123 (quoting *Doss v. ITT Rayonier Inc.*, 60 Wn. App. 125, 127 n.2, 803 P.2d 4 (1991)). If the duty exists, it is nondelegable. *Kelley*, 90 Wn.2d at 334. If the general contractor—or by extension, jobsite owner—has the right to exercise control, it also "has a duty, within the scope of that control, to provide a safe place of work." *Id.* at 330; *accord* RESTATEMENT (SECOND) OF TORTS § 414 (AM. LAW INST. 1965).

Afoa argues the Port's nondelegable duty to provide a safe workplace under WISHA and common law made it vicariously liable for the airlines' fault. We disagree. The jury found that Afoa's injuries were the result of both the Port and

the airlines' failure to ensure a safe workplace.[7] *See generally Weinert v. Bronco Nat'l Co.*, 58 Wn. App. 692, 795 P.2d 1167 (1990) (duty to comply with safety regulations applies to any party with supervisory authority on a jobsite). But neither has escaped its own liability by delegation to the other.

WISHA does not expressly provide for vicarious liability when employers are concurrently negligent. In contrast, even though RCW 4.22.070 requires proportionate liability, the legislature has expressly provided that a product seller may have the liability of a manufacturer under certain circumstances. RCW 7.72.040.[8] WISHA requires employers to "comply with the rules, regulations, and orders promulgated under this chapter." RCW 49.17.060(2). Nothing in chapter 49.17 RCW suggests that the legislature intended to impose joint and several liability for WISHA violations.

At the same time, liability for breach of a nondelegable duty does not undermine the fault allocation under RCW 4.22.070. Lawmakers did not intend to

---

[7] As a threshold matter, the Port urges us to reject Afoa's arguments because they were not preserved. We disagree. When the trial court interpreted RCW 4.22.070, it considered the exceptions to proportionate liability that it contains. *See Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 291, 840 P.2d 860 (1992) (we may consider new arguments when "the issue is advanced below and the trial court has an opportunity to consider and rule on relevant authority." (citing *Bennett v. Hardy*, 113 Wn.2d 912, 917, 784 P.2d 1258 (1990))). Thus, the issue was adequately presented.
[8] The products liability act, under RCW 7.72.040(2), specifically states, "A product seller, other than a manufacturer, shall have the liability of a manufacturer to the claimant."

10

minimize the responsibility of the nonparty airlines that had a concurrent nondelegable duty.

Principles of common law survive RCW 4.22.070, but there is no clearly established common law right to hold tortfeasors with a nondelegable duty vicariously liable for another entity's breach of the same duty.[9] It would be difficult for such a situation to arise under common law. *See Wenatchee Wenoka Growers Ass'n v. Krack Corp.*, 89 Wn.2d 847, 849-50, 576 P.2d 388 (1978). There was, however, a principle at common law that a defendant would not be responsible for another's independent tortious acts.

The dissent correctly recognizes an exception to this independent contractor rule: a nondelegable duty may result in vicarious liability.[10] That exception is irrelevant here. *See Millican v. N.A. Degerstrom, Inc.*, 177 Wn. App. 881, 896-97, 313 P.3d 1215 (2013) ("'[A] "non-delegable duty" requires the person upon whom it is imposed to answer for it that care is exercised by anyone . . . to whom the performance of the duty is entrusted.'" (quoting RESTATEMENT (SECOND) OF TORTS

---

[9] Joint and several liability applied to concurrently negligent defendants between 1973 and 1986; by operation of statute, the jury was not required to determine the fault of individual defendants. *Edgar*, 129 Wn.2d at 631 & n.6; *see also Seattle-First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 235-36, 588 P.2d 1308 (1978) ("liability at common law applies *only* to joint tort-feasors," not concurrent tortfeasors (emphasis added)).

[10] *See* dissent at 5 & 9 n.2 (citing *Kelley*, 90 Wn.2d at 330). When an entity has a nondelegable duty, it cannot escape liability by delegating its duty to another entity. *Millican v. N.A. Degerstrom, Inc.*, 177 Wn. App. 881, 896-97, 313 P.3d 1215 (2013). Thus, the Port cannot escape its proportionate share of responsibility under RCW 4.22.070 by delegation.

ch. 15, topic 2, intro. note)). No delegation occurred here. Simply because the Port cannot delegate its responsibility does not mean it must adopt the responsibility of another.

RCW 4.22.070 is consistent with the principle that a defendant with a nondelegable duty cannot discharge its primary responsibility to ensure compliance. In *Millican*, the Court of Appeals reversed a trial court's decision to admit a contract delegating the defendant's responsibility under WISHA because the defendant argued another party had sole responsibility for work site safety under the contract. 177 Wn. App. at 890. A defendant may argue another entity was the sole proximate cause of an injury but cannot argue the other entity is the sole proximate cause when it was "'carrying out'" the defendant's nondelegable duty. *Id.* at 896 (quoting RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 57 cmt. b (AM. LAW INST. 2012)); *see also Wiggs v. City of Phoenix*, 198 Ariz. 367, 10 P.3d 625 (2000) (defendant city remained vicariously liable for any percentage of fault allocated to the empty chair company it contracted to maintain its streetlights because the city had a nondelegable duty to maintain its streets in a reasonably safe condition). *Millican* does not stand for the proposition that another entity cannot be separately responsible for work site safety. An entity that delegates its nondelegable duty will be vicariously liable for the negligence of the entity subject to its delegation, but an

12

entity's nondelegable duty cannot substitute for a factual determination of vicarious liability when RCW 4.22.070(1) clearly requires apportionment to "every entity which caused the claimant's damages."

The Port can still be vicariously liable for the airlines' negligence if the jury makes the necessary finding of control because RCW 4.22.070(1)(a) "explicitly retains principles of common law vicarious liability" within its exceptions. *Johnson v. Recreational Equip., Inc.*, 159 Wn. App. 939, 950, 247 P.3d 18 (2011). Thus, we turn to whether Afoa proved an RCW 4.22.070 exception applied.

B. The Nonparty Airlines Do Not Fall within the Agency Exception to RCW 4.22.070 without the Required Factual Finding

Afoa did not ask the jury to find that the Port retained control over the airlines or make any agency arguments until after the verdict. The Port contends that raising RCW 4.22.070's agency exception now is too late. We agree. Agency presents a question of fact that Afoa should have presented to the jury. *Travelers Cas. & Sur. Co. v. Wash. Tr. Bank*, 186 Wn.2d 921, 937, 383 P.3d 512 (2016) (citing *Unruh v. Cacchiotti*, 172 Wn.2d 98, 114, 257 P.3d 631 (2011)).

There is a long-standing common law duty to provide a safe workplace in Washington, and the Port is directly liable in this case as a result; while the Port could be vicariously liable for the airlines' breach of their concurrent nondelegable duties if a jury found that the Port retained control over the airlines, the jury was not presented with the opportunity to do so. *Afoa* I, 176 Wn.2d at 475-76 (citing

13

*Kelley*, 90 Wn.2d at 331-32); *see also Uni-Com Nw., Ltd. v. Argus Publ'g Co.*, 47 Wn. App. 787, 796, 737 P.2d 304 (1987) ("The existence of a principal-agent relationship is a question of fact unless the facts are undisputed."). The jury is ultimately responsible for determining "the entity in the best position to ensure a safe working environment." *Afoa I*, 176 Wn.2d at 479 (citing *Kelley*, 90 Wn.2d at 331); *Edgar*, 129 Wn.2d at 627 (right to a jury trial includes right to have jury determine allocation of fault (citing *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 648-49, 771 P.2d 711, 780 P.2d 260 (1989))).

Notably, in *Johnson*, the Court of Appeals could apply the agency principles retained in RCW 4.22.070's exceptions only because it was undisputed that the product seller held itself out as the manufacturer by placing its brand on the defective product. 159 Wn. App. at 946. Similarly, in *Yong Tao v. Heng Bin Li*, a case involving an injured passenger in the second van of a three-van caravan, brought against the lead driver, the Court of Appeals held that the material question of control precluded summary judgment on the issue of joint and several liability under RCW 4.22.070. 140 Wn. App. 825, 830-31, 166 P.3d 1263 (2007). As in *Yong Tao*, the facts here are disputed and vicarious liability under the agency exception remains unproved.[11]

---

[11] Afoa relied on *Yong Tao* in his initial briefing to the Court of Appeals in 2010, which led to *Afoa I*, to argue that summary judgment should be reversed because the Port and airlines were

In this case, Afoa now argues the agency exception applies despite his failure to ask the jury to address the disputed facts. For RCW 4.22.070's agency exception to apply, either the facts necessary to establish the agency exception had to be undisputed or the jury was required to make a factual finding.[12] The burden of establishing an agency relationship is on the party asserting it exists. *Hewson Constr., Inc. v. Reintree Corp.*, 101 Wn.2d 819, 823, 685 P.2d 1062 (1984). The traditional rules of agency apply here: "an agency relationship results from the manifestation of consent by one person that another shall act on his behalf and subject to his control, with a correlative manifestation of consent by the other party to act on his behalf and subject to his control." *Moss v. Vadman*, 77 Wn.2d 396, 402-03, 463 P.2d 159 (1969).

In the context of the WISHA specific and common law duty to provide a safe work site, control exists where "there is a retention of the right to direct the manner in which the work is performed." *See Kamla*, 147 Wn.2d at 121; *see also Carabba v. Anacortes Sch. Dist. No. 103*, 72 Wn.2d 939, 956-58, 435 P.2d 936 (1967) (requiring actual evidence of delegation).

---

jointly and severally liable. *See* Br. of Appellant, *Afoa v. Port of Seattle*, No. 64545-5-I, at 33-34 ("Reasonable inferences from the record support fact questions . . . ." (citing RCW 4.22.070(a))).
[12] While the term "acting as" in RCW 4.22.070(1)(a) may give plaintiffs leeway to argue that a third-party was an ostensible agent or performing a task on the defendant's behalf, it cannot be inferred to mean that agency is established per se for all entities when a party retains control of a specific entity. *See generally Matsumura v. Eilert*, 74 Wn.2d 362, 368, 444 P.2d 806 (1968) ("[A]gency does not come into existence out of thin air." (citing RESTATEMENT (SECOND) OF AGENCY § 1 (AM. LAW INST. 1958))).

The jury found only that the Port retained control over EAGLE. CP at 4839 ("[d]id the defendant [the Port] retain a right to control the manner in which the plaintiff's employer, [EAGLE], . . . performed its work or maintained its equipment used to provide ground support").[13] There was no finding that the Port retained control over the airlines. *Id.* at 4780-834 (instructions), 4839-42 (special verdict form). In *Afoa* I, we were required to assume that Afoa's allegation that the Port "exercise[d] nearly plenary control over Sea-Tac Airport and the manner in which work is performed on the premises" was true because the case came to us on summary judgment. 176 Wn.2d at 478 (the Port argued that it simply issued licenses). But at this stage, Afoa cannot prevail by making allegations about the Port's pervasive control when control was a question for the jury. *See id.* at 472 (citing *Kamla*, 147 Wn.2d at 125). The jury must find that the defendant controlled another entity before the defendant is vicariously liable for that other entity's negligence. It did not here.

Finally, the dissent minimizes the airlines' responsibility under our system of comparative fault and makes up for Afoa's unsuccessful litigation tactics. That the Port retained control of EAGLE did not change the airlines' status to

---

[13] We did not grant review of the Port's contention that the verdict form was based on an incorrect statement of the law; the Court of Appeals held that the verdict form permitted the Port to argue its theory of the case. *Afoa* II, 198 Wn. App at 216-21. Specifically, the verdict form allowed the Port to argue that the "airlines had control." *Id.* at 220.

subcontractor or make the airlines' duty subordinate (or vicariously liable) to the Port's duty. Furthermore, special verdict or not, we cannot assume that the airlines had no control over EAGLE given the jury's apportionment of 74.8 percent of the fault for Afoa's injuries to the airlines.[14] Dissent at 17 & 16 n.6. The jury finding of retained control made it so the Port was directly liable for its share of the fault, nothing more. *See Phillips v. Kaiser Alum. & Chem. Corp.*, 74 Wn. App. 741, 750-51, 875 P.2d 1228 (1994) (citing *Kelley*, 90 Wn.2d at 330). Afoa proved the Port was partially responsible for his injuries, but a full recovery under RCW 4.22.070 required Afoa to timely sue the Port and the airlines in one cause of action or argue agency.

The trial court did not err because a nondelegable duty does not supersede fault allocation under RCW 4.22.070 and the jury did not find facts that would justify applying RCW 4.22.070's agency exception. Since Afoa did not raise the factual question of agency until after trial, he waived his opportunity to prove it.[15]

---

[14] There is no other reasonable explanation for the jury's allocation of fault. *See Spokane & Inland Empire R.R. Co. v. Campbell*, 241 U.S. 497, 502, 36 S. Ct. 683, 60 L. Ed. 1125 (1916) ("where the general verdict and the special findings can be harmonized by taking into consideration the entire record of the cause, including the evidence and the instructions to the jury, and construing it liberally for that purpose, it is the duty of the court to harmonize them" (citing *Pepperall v. City Park Transit Co.*, 15 Wash. 176, 180, 183, 45 P. 743 (1896))). Multiple entities can retain "the right to direct the manner in which the work is performed." *Kamla*, 147 Wn.2d at 121. Holding otherwise would imply that finding the Port "retained control" meant the "actual exercise of control over the manner in which the work is performed"—a requirement we reject in this context. *Id.*

[15] We will not disturb the trial court's apportioned judgment award at this late stage for additional fact-finding. *Cf. Hogan v. Sacred Heart Med. Ctr.*, 101 Wn. App. 43, 55, 2 P.3d 968 (2000).

*Afoa v. Port of Seattle*, No. 94525-0

Therefore, we turn to the contingent issues raised by Afoa, which the Court of Appeals did not address.

II. *Empty Chair Defense and Issue Preclusion*

The trial court permitted the Port to make an empty chair defense under CR 12(i). Afoa contends the trial court abused its discretion because he was unfairly surprised. The trial court's decision is reviewed for manifest abuse of discretion. *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 165, 736 P.2d 249 (1987); *see also State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013). Afoa also argues the trial court could not allocate fault to the empty chair airlines because a judgment in a separate proceeding precluded allocation for the same issue. The trial court's alleged errors of law are reviewed de novo. *Jongeward*, 174 Wn.2d at 592.

Afoa argues that the Port had a "full and fair opportunity . . . to litigate airline liability" in federal court and successfully obtained a federal judgment finding no airline liability. Supp'l Br. of Resp't at 20. The Port, on the other hand, argues that "[d]istilled to its essence, [Afoa] seeks to use his strategic error in splitting his claims into two separate suits and his failure to prove his case in federal court, as a sword against the Port to prevent it from receiving its day in court." Supp'l Br. of Pet'r at 19.

Nonparty fault must be affirmatively pleaded. CR 12(i). The party claiming another nonparty entity is at fault must also affirmatively plead the identity of that

18

nonparty. *Id.* In this case, the trial court allowed the Port to amend its answer under CR 15(a) to assert the airlines' fault. Before the amendment, the Port's answer raised the fault of other unidentified parties. Afoa sued the airlines in a separate proceeding years before the Port sought to amend its answer and assert its affirmative defense.

In the suit removed to federal court, Afoa asserted essentially the same claims against the airlines as he levied against the Port. The Port was not a party in that suit. It is undisputed that the Port and the airlines retained the same counsel to defend the respective suits. It is also undisputed that the Port moved to amend its answer early enough to allow Afoa to prepare his defense in this case. The Port and Afoa dispute three issues: (1) whether the Port's representations prejudiced Afoa, (2) whether the Port and the airlines were in privity, and (3) whether collateral estoppel would work an injustice. Afoa is not entitled to relief because the trial court did not abuse its discretion and the Port was not equitably barred from allocating fault to the nonparty airlines.

A. The Trial Court Applied the Correct Legal Standard

Afoa argues that the Port's late amendment prejudiced him because it delayed identification of the airlines as empty chairs until the statute of limitations, res judicata, and collateral estoppel prevented Afoa from recovering against them. Thereby, the Port deprived him the opportunity to decide all liability in a single

proceeding and full compensation for his injuries. But Afoa initiated the separate proceeding and failed to ask the jury to find the Port vicariously liable for the airlines' fault by finding agency.

None of Afoa's arguments explain why the Port's actions justified his separate suit against the airlines. By the time the Port amended its answer, Afoa had already asserted the airlines were at fault in the federal suit. The Port told Afoa that it was asserting the affirmative defense due to his claims against the airlines in the federal suit. Afoa argues that the Port was playing both sides and that he was misled because the Port said it would make "a sole proximate cause defense." *See, e.g.*, CP at 5198. The Port did assert EAGLE and the vehicle's manufacturer were the sole proximate cause for Afoa's injuries, but the Port also put Afoa on notice that other entities were responsible for the accident. Afoa learned about the specific nonparty airlines when the Port provided him with its agreements with the airlines. And Afoa was also able to sue the airlines in this suit from the time of the accident until two years later when he filed his first appeal.

In denying Afoa's motion to strike the affirmative defense, Judge Allred reasoned that if Afoa was barred from recovering full compensation, it was "the consequence of [his] litigation choices (including the decision to sue the Port and the Airlines separately)." *Id.* at 9240. Similarly, in reaffirming that decision,

Judge Ramseyer said, "[T]he decision of who to sue and when to sue them was [Afoa's]." *Id.* at 9199. We agree.

In his separate suit, Afoa alleged the airlines were liable for his injuries on the same basis as the jury heard in the underlying personal injury action. In that separate suit, the airlines were granted summary judgment. It would be unjust to hold the Port responsible for the negligence of the airlines in light of Afoa's separate suit.

Leave to amend a pleading "shall be freely given when justice so requires." CR 15; *Caruso v. Local Union No. 690*, 100 Wn.2d 343, 349, 670 P.2d 240 (1983). Afoa's separate lawsuit justified the Port's amendment, and the Port was not the only party from which Afoa could potentially recover. Therefore, Afoa cannot show he was unfairly surprised. The trial court applied the correct legal standard.

B. Afoa's Federal Suit Did Not Bar the Port from Arguing the Airlines Were at Fault

Finally, Afoa argues that the equitable doctrines of res judicata and collateral estoppel apply because the airlines cannot be at fault. Res judicata prevents relitigation of the same claim where a subsequent claim involves the same subject matter, cause of action, persons and parties, and quality of persons for or against whom the claim is made. *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995). Collateral estoppel requires proof that (1) the issue in the prior

and current action is identical, (2) the prior action ended in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action, and (4) the application of collateral estoppel would not work an injustice. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 326, 96 P.3d 957 (2004) (quoting *Clark v. Baines*, 150 Wn.2d 905, 913, 84 P.3d 245 (2004)). Only two aspects of res judicata and collateral estoppel are at issue in this case: privity and the injustice element of collateral estoppel.

Afoa argues that privity is established because the Port controlled the defense of the airlines in federal court, port agents testified against airline liability in the federal case, and the Port and the airlines have a common insurer. He specifically points to a proposed stipulation that was rejected. Afoa attempted to have the Port stipulate to the dismissal of the airlines case in federal court, to which the Port was not a party, if the Port would agree that no fault shall be apportioned to the airlines. As the Port indicates, it had no reason to sign and the airlines could not sign because the airlines had no authority to waive the Port's defense. "'Privity does not arise from the mere fact that persons as litigants are interested in the same question or in proving or disproving the same state [or set] of facts.'" *United States v. Deaconess Med. Ctr.*, 140 Wn.2d 104, 111, 994 P.2d 830 (2000) (internal quotation marks omitted) (quoting *Owens v. Kuro*, 56 Wn.2d

22

564, 568, 354 P.2d 696 (1960)); *see also Martin v. Abbott Labs.*, 102 Wn.2d 581, 598, 689 P.2d 368 (1984) (imitative conduct is not concerted action).

"A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." RESTATEMENT (SECOND) JUDGMENTS § 39 (AM. LAW INST. 1982); *see also Loveridge,* 125 Wn.2d at 764. It is not at all clear that the Port controlled the airlines' defense or that it had authority to accept the stipulation. The airlines asserted they were not at fault in the federal suit, and the Port argued the airlines were at fault in the instant action; any inconsistency can be explained by the fact that they are different parties. Further, the testimony by port employees was a result of their knowledge about the facts of the case. Afoa does not establish that sharing counsel or an insurer establishes privity.

Collateral estoppel is inapplicable where it would work an injustice on the party being estopped. *Christensen*, 152 Wn.2d at 307. Here, that party is the Port. Afoa requests that the Port be responsible for the airlines' fault without a finding that the airlines were the Port's agent and in spite of the fact that Afoa sued the airlines in a separate action.[16] The trial court correctly rejected Afoa's arguments.

---

[16] Judge Allred explained that "it would be a misuse of the collateral estoppel and res judicata doctrines to allow Afoa to vehemently assert Airline liability in the Airlines lawsuit, lose that

23

CONCLUSION

Under RCW 4.22.070, the liability of defendants concurrently owing a nondelegable duty with another entity is several unless an exception is found. That is, in this case, "[a] party shall be responsible for the fault of another person or for payment of the proportionate share of another party where both were acting in concert or when a person was acting as an agent or servant of the party." RCW 4.22.070(1)(a). Here, the Port was not vicariously liable for the airlines' negligence because the jury was not asked to find if the Port retained control of the airlines. Further, the trial court did not abuse its discretion by permitting a CR 12(i) empty chair defense because Afoa was not unfairly surprised when the Port named the airlines in its amended complaint. Similarly, the federal court's summary judgment did not preclude the Port from making its empty chair defense because the Port was not a party in the federal suit. We reverse the Court of Appeals and reinstate the trial court's apportioned award.

---

lawsuit, and then use that loss to obtain a ruling in this case—as a matter of law—that the Airlines bear no fault under RCW 4.22.070(1)." CP at 3179.

Gonzáles, J.

WE CONCUR:

Fairhurst, CJ.

Madsen, J.

Gordon McCloud, J.

Yu, J.

No. 94525-0

STEPHENS, J. (dissenting)—In our first appeal in this case, we stated, "The Port [of Seattle] is the only entity with sufficient supervisory and coordinating authority to ensure safety in this complex, multiemployer work site. If the Port does not keep Sea-Tac Airport safe for workers, it is difficult to imagine who will." *Afoa v. Port of Seattle*, 176 Wn.2d 460, 479, 296 P.3d 800 (2013) (*Afoa* I). A jury subsequently found that the Port retained a right of control over Brandon Afoa's work conditions at Seattle-Tacoma International Airport (Sea-Tac Airport), giving rise to a nondelegable duty. It also found that the Port was negligent. Respecting the jury's verdict, the Court of Appeals correctly held that the Port's breach of its nondelegable duty makes it jointly and severally liable for Afoa's injuries arising from work site safety breaches, regardless of whether other entities are also liable.

*Afoa v. Port of Seattle*, 198 Wn. App. 206, 234, 393 P.3d 802 (2017) (*Afoa* II). Joint and several liability in this context is integral to the nondelegable duty doctrine and is fully consistent with RCW 4.22.070. Thus, the majority's recognition that RCW 4.22.070(1)(a) preserves joint and several liability when a defendant owes a nondelegable duty should end the matter. We should affirm the Court of Appeals.

The majority's contrary holding renders the nondelegable duty doctrine meaningless. Its tangled discussion of how the Port and the airlines owed concurrent, separate nondelegable duties cannot obscure the fact that unless the Port is held vicariously liable for the safety breaches that caused Afoa's injuries, its duty is no longer "nondelegable." To quote the Arizona Supreme Court, "[H]ow can it be that one can admit to the existence of a non-delegable duty, but then disclaim liability for the non-performance of that duty? The concepts are mutually exclusive." *Wiggs v. City of Phoenix*, 198 Ariz. 367, 370, 10 P.3d 625 (2000). The result of the majority's decision will be to dramatically change the law and to eviscerate the protections for workers at multiemployer work sites recognized under the Washington Industrial Safety and Health Act of 1973 (WISHA), ch. 49.17 RCW, and our precedent. I respectfully dissent.

I begin by looking closer at the history of the nondelegable duty doctrine, which reflects a policy-based expansion of traditional vicarious liability principles

recognized in the "master-servant" relationship in agency law. I then identify the jury instructions and special verdict that make clear what the jury found in this case: the Port breached its nondelegable duty to provide a safe workplace, giving rise to vicarious liability. Finally, I consider RCW 4.22.070 and related statutory provisions to show that joint and several liability remains intact in cases such as this despite the general statutory preference for several liability among joint tortfeasors. As a result, the Port is vicariously liable for the share of fault the jury allocated to the nonparty airlines.

I. The Nondelegable Duty Doctrine Imposes Vicarious Liability on the Port for the Airlines' Negligence Because the Port Retained Control over Safety Matters at Sea-Tac Airport

This case involves the nondelegable duty theory of vicarious liability, under which a general contractor or owner is jointly and severally liable for failure to maintain a reasonably safe workplace. This theory of liability arose in the common law as an exception to the general rule that one who engages an independent contractor is not liable for injuries sustained by an independent contractor's employees. It is also specifically recognized under WISHA, which places the primary duty for work site safety on a general contractor or employer with retained control. Because nondelegable duties involve a form of vicarious liability, the general contractor or owner is not only directly liable for breach of its own duty to

ensure a safe workplace but also vicariously liable for the failure of others to provide a safe workplace.

Afoa's claims against the Port are premised on the nondelegable duty doctrine. *Afoa* I, 176 Wn.2d at 464 (recognizing Port's potential liability under two theories of liability previously applied in other multiemployer workplace cases: (1) "the duty of a general contractor to maintain a safe common area for any employee of subcontractors" and (2) "for breach of safety regulations under [WISHA]").[1] The Port does not dispute that the jury found the Port retained control over the work of Afoa's employer, Evergreen Aviation Ground Logistics Enterprise Inc. (EAGLE), giving rise to a nondelegable duty. The Port insists, however, that RCW 4.22.070 abrogated joint and several liability in the nondelegable duty context, and that because the jury was never asked whether the Port retained control over the *airlines*, who hired EAGLE, there is no factual finding to support vicarious liability. Suppl. Br. of Pet'r/Cross-Resp't at 6-8, 10. To understand why these arguments are wrong, it is necessary to trace the history and purpose of the nondelegable duty doctrine, both under the common law and under WISHA.

---

[1] Afoa also brought a claim of premises liability, which this court recognized in *Afoa* I. 176 Wn.2d at 467-69. The jury found in favor of the Port on the premises liability claim, and it is no longer before us.

A. *The Port Owes a Common Law Nondelegable Duty To Maintain Safe Common Work Areas*

*Afoa* I recognizes that "[u]nder our common law safe workplace doctrine, landowners and general contractors that retain control over a work site have a duty to maintain safe common work areas." 176 Wn.2d at 475. Our common law safe workplace doctrine operates as an exception to the general rule, sometimes called the "independent contractor rule," that an employer who contracts with an independent contractor is not liable for injuries sustained by the independent contractor's employees. RESTATEMENT (SECOND) OF TORTS § 409 (AM. LAW INST. 1965); *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 330, 582 P.2d 500 (1978); *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 460, 788 P.2d 545 (1990). Under the safe workplace doctrine, if the employer retains control over some part of the independent contractor's work, the employer owes a nondelegable duty within the scope of that control to provide a reasonably safe workplace. *Stute*, 114 Wn.2d at 460; *Kennedy v. Sea-Land Serv., Inc.*, 62 Wn. App. 839, 851, 816 P.2d 75 (1991); RESTATEMENT (SECOND) OF TORTS § 414.

In *Afoa* I, we described the origins of the common law safe workplace doctrine as rooted in "master-servant" agency principles:

> Historically, our common law workplace safety doctrine has its roots in the master-servant relationship. At common law, a "master" has a duty to its "servant[s]" to maintain a reasonably safe place to work.

> Over time, we have expanded the doctrine beyond the narrow confines of the master-servant relationship.

176 Wn.2d at 475 (citation omitted) (citing *Myers v. Little Church by Side of Rd.*, 37 Wn.2d 897, 901-02, 227 P.2d 165 (1951)). To shed light on the doctrine's evolution, we discussed three key cases—*Myers, Kelley,* and *Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 52 P.3d 472 (2002). In *Myers*, a hotel contracted with an elevator company to repair a defective elevator and make weekly service calls. 37 Wn.2d at 900. An employee of the hotel was subsequently injured while operating the faulty elevator. The employee sued the hotel to recover damages for his injuries, and the hotel sought to avoid liability by arguing that the employee's injuries were caused by the independent contractor's negligence. In holding that the independent contractor's negligence was imputable to the hotel, the *Myers* court reasoned that "[t]he master's duty to provide the servant with a reasonably safe place to work is nondelegable," and therefore the hotel "cannot escape liability for the negligence of the elevator company on the theory that the latter was an independent contractor." *Id.* at 904. Importantly, the basis of the hotel's liability was vicarious liability under the nondelegable duty to provide a safe workplace, not the hotel's direct relationship with the employee.

*Kelley* and *Kamla* extended the *Myers* rule to general contractors and jobsite owners. In *Kelley*, a general contractor argued that it had no duty to provide a safe

-6-

workplace for the plaintiff, an employee of a subcontractor, because there was no master-servant relationship between the parties. 90 Wn.2d at 329. The general contractor invoked the "independent contractor rule," arguing that a principal who hires an independent contractor is not liable for harm resulting from the contractor's work. We refused to so limit the doctrine to the master-servant relationship and instead imposed a safe workplace duty on the general contractor irrespective of the precise contractual relationship between the parties. *Id.* at 330; *see also Afoa* I, 176 Wn.2d at 477 ("We held that the relevant inquiry is whether the principal retained control over the work site, not whether there was a direct employment relationship between the parties." (describing the holding in *Kelley*)).

In *Kamla*, we considered whether the common law safe workplace doctrine applied to a jobsite owner, just as it applied to the general contractor in *Kelley*. 147 Wn.2d at 119-20. We held that the doctrine was not strictly limited to general contractors and that a jobsite owner could be liable under a common law safe workplace theory if the jobsite owner retained the right to control the manner in which the independent contractor completed its work. *Id.* at 121. Regarding the issue of control, the *Kamla* decision clarified that the test is not whether there is an actual *exercise* of control but, rather, whether the jobsite owner retains a *right* to direct or interfere with the manner in which the work is performed. *Id.* Because the

jobsite owner in *Kamla* did not assume responsibility for worker safety or retain the right to control or interfere in any way with the manner in which the independent contractor and its employees worked, we held that the owner did not retain the relevant control to support a nondelegable duty and was therefore not liable for the employee's injuries. *Id.* at 121-22.

*Kelley* and *Kamla* stand for the proposition that "the existence of a safe workplace duty depends on retained control over work, not on labels or contractual designations such as 'independent contractor' or 'general contractor.'" *Afoa* I, 176 Wn.2d at 477. We relied on that proposition in *Afoa* I to reject the Port's argument that it owed no duty to Afoa under *Kelley*, which the Port contended applies only to general contractors, whereas the Port was a mere "licensor." *Id.* at 478 ("Calling the relationship a license does not change reality."). We clarified that "*Kelley* does not limit its application to a narrow variant of the employment relation. It does not require a 'master' or 'servant,' an 'employer' or 'employee,' or indeed any specific combination of contractual relationships." *Id.* To the contrary, *Kelley* and *Kamla* mandate that "when an entity (whether a general contractor or a jobsite owner) retains control over the manner in which work is done on a work site, that entity has a duty to keep common work areas safe because it is best able to prevent harm to workers." *Id.* We explained in *Afoa* I how that duty applies in this case: "[W]here

a licensor undertakes to control worker safety in a large, complex work site like Sea-Tac Airport and is in the best position to control safety, there is a duty to maintain safe common work areas within the scope of retained control." *Id.* at 481.[2]

B. *The Port Owes a Statutory Nondelegable Duty To Ensure WISHA Compliance*

The Port owed Afoa not only a common law duty to provide a safe workplace but also a nondelegable statutory duty to ensure compliance with WISHA regulations. Our decision in *Afoa* I recognized that jobsite owners, such as the Port, owe a specific duty to prevent WISHA violations when they retain control over work

---

[2] The majority nonetheless insists "there is no clearly established common law right to hold tortfeasors with a nondelegable duty vicariously liable for another entity's breach of the same duty." Majority at 11. For support, it cites only *Wenatchee Wenoka Growers Ass'n v. Krack Corp.*, 89 Wn.2d 847, 849-50, 576 P.2d 388 (1978), which has nothing to do with vicarious liability for nondelegable duties but simply identifies the difference between comparative negligence and contribution principles. The majority erroneously dismisses the nondelegable duty line of cases as irrelevant on the mistaken notion that they require an actual delegation of nondelegable duties. Majority at 11-12 & n.10. But, as our opinion in *Afoa* I makes clear, the retained *right* of control gives rise to the duty *regardless* of whether aspects of the work are delegated, not *because* aspects of the work are delegated. The conclusion the majority draws—limiting liability for breach of a nondelegable duty to the defendant's "proportionate share of responsibility," *id.* at 11 n.10—is undercut by the very cases it relies on. *See Millican v. N.A. Degerstrom, Inc.*, 177 Wn. App. 881, 896-97, 313 P.3d 1215 (2013) ("'a "non-delegable duty" requires the person upon whom it is imposed to answer for it that care is exercised by anyone, even though he be an independent contractor, to whom the performance of the duty is entrusted'" (quoting RESTATEMENT (SECOND) OF TORTS ch. 15, topic 2, intro. note at 394)); *Wiggs*, 198 Ariz. at 371 (recognizing nondelegable duty doctrine creates agency relationship "as a matter of law . . . for purposes of applying the doctrine of *respondeat superior*" and noting "it does not make legal or tactical sense to name as a non-party at fault, the party whose conduct is imputed to the employer, because the employer will be fully liable for that fault").

done on a jobsite. *Id.* at 472-73. Under WISHA, all employers must comply with distinct duties arising from RCW 49.17.060's two subsections. *Id.* at 471 (citing *Goucher v. J.R. Simplot Co.*, 104 Wn.2d 662, 671, 709 P.2d 774 (1985)). Subsection (1) creates a "'general duty'" for all employers to maintain a workplace free from recognized hazards, and this duty runs from an employer to its own employees. *Id.* Subsection (2) creates a separate, "'specific duty'" for employers to comply with WISHA regulations. *Id.* "Unlike the general duty, the specific duty runs to *any* employee who may be harmed by the employer's violation of the safety rules." *Id.*

The *Afoa* I decision confirmed that a jobsite owner, such as the Port, is not per se liable for all WISHA violations at the work site. Whereas general contractors always have a duty to comply with WISHA regulations, "jobsite owners have a duty to comply with WISHA only if they retain control over the manner in which contractors complete their work." *Id.* at 472. If a jobsite owner retains control over "the manner and instrumentalities of work being done on the jobsite," the owner has a nondelegable specific duty to comply with WISHA regulations, and this duty extends to all workers on the jobsite. *Id.*; *see also Stute*, 114 Wn.2d at 464 (recognizing general contractor's liability to subcontractor's employee based on violation of WISHA and reasoning that a "general contractor should bear primary responsibility for compliance with safety regulations because the general

contractor's innate supervisory authority constitutes sufficient control over the workplace").

We held in *Afoa* I that if the jury determined the Port retained a right to control the manner in which Afoa's employer performed its work or maintained safe conditions, the Port owed a nondelegable specific duty under WISHA. 176 Wn.2d at 473-74. In so holding, we flatly rejected the Port's argument that it did not owe Afoa a duty to comply with WISHA regulations because the Port's relationship with EAGLE and Afoa was only that of licensor and licensee. *Id.* at 473 (noting WISHA's specific duty does not require a direct employment relationship). We explained that reading the statute narrowly would "contravene both federal law and WISHA's clearly articulated policy of protecting workplace safety." *Id.* Responding to the dissent's view that WISHA duties should be limited to either direct employment or employer-subcontractor relationships, we reiterated that we had never so limited WISHA duties and it would be improper to do so in this case:

> The Port operates a major airport facility, is responsible for its own employees, and allows controlled access to thousands of employees of other employers. Under these circumstances, the Port is closely analogous to a general contractor.

*Id.* at 474.

As with the common law safe workplace doctrine, liability under the WISHA specific nondelegable duty doctrine results in vicarious liability. This is because a

control party, such as the Port, "bear[s] the primary responsibility for compliance with safety regulations." *Stute*, 114 Wn.2d at 464. Though subcontractors and others at the work site retain concurrent responsibility to meet workplace safety standards, "the primary employer, the general contractor, has, as a matter of policy, the duty to comply with or ensure compliance with WISHA and its regulations" because the general contractor's supervisory authority places it in the best position to ensure WISHA compliance for the safety of all workers. *Id.* at 463; *Gilbert H. Moen Co. v. Island Steel Erectors, Inc.*, 128 Wn.2d 745, 756-58, 912 P.2d 472 (1996).

Consequently, a violation of WISHA by a subcontractor is not only chargeable to the subcontractor but also chargeable to a general contractor—"the primary employer," whose supervisory authority puts it "in the best position to ensure compliance with safety regulations." *Stute*, 114 Wn.2d at 463; *Millican v. N.A. Degerstrom, Inc.*, 177 Wn. App. 881, 893, 313 P.3d 1215 (2013). As Professor Prosser has explained, cases based on the nondelegable duty doctrine hold "the employer liable for the negligence of the contractor, although he has himself done everything that could reasonably be required of him. They are thus cases of vicarious liability." WILLIAM L. PROSSER, THE LAW OF TORTS 470 (4th ed. 1971).

This is such a case. Afoa's theory of liability against the Port is premised on his claim that the Port owed a nondelegable duty to ensure a safe work site at Sea-Tac Airport, including safe maintenance of the vehicle he was driving when he was injured. The Port's nondelegable duty arises under both the common law and WISHA. To establish this duty, Afoa had to prove to the jury that the Port retained a right of control over work site safety conditions. Because Afoa worked for EAGLE, the relevant control focused on EAGLE's work site conditions. This legal framework provides the backdrop for properly assessing the import of the jury's verdict in this case.

II. The Jury Instructions and the Verdict Establish that the Port Breached Its Nondelegable Duty To Maintain a Safe Work Site and Is Vicariously Liable for the Airlines' Negligence

Following six weeks of trial, the jury rendered a verdict in favor of Afoa and determined his damages totaled $40 million. Clerk's Papers (CP) at 4841. The jury found that the Port retained the right to control the manner in which Afoa's employer, EAGLE, performed its work and maintained its equipment, and also found that the combined negligence of the Port, the nonparty airlines, and Afoa proximately caused Afoa's injuries. *Id.* at 4839-41. In light of the jury instructions and the special verdict form, the jury's verdict is dispositive of three things: (1) the Port retained a right of control to ensure compliance with safety standards in the

workplace, (2) the Port therefore owed a nondelegable common law and WISHA specific duty to Afoa, and, as a result, (3) the Port is directly and vicariously liable for Afoa's injuries.

The Port's insistence that its liability must be separated from the airlines' liability ignores the way this case was tried. At trial, the Port argued that there was no evidence "that says the Port of Seattle retains the right to control how the air carriers do their work or maintain their equipment or how the ground support providers do their work or maintain their equipment." Verbatim Report of Proceedings (Mar. 25, 2015) (VRP) at 3512; *see also id.* at 3514-15, 3520-21. To support this position, the Port relied on "documentary evidence that the Port of Seattle did not retain the right to control how the air carriers or its ground support providers did their work," which included (1) the Port's signatory lease and operating agreements (SLOAs), signed by each of the four nonparty airlines,[3] (2) EAGLE's ground service operating license agreement with the Port,[4] and (3) the

_____

[3] Under the SLOAs, "[t]he Port owns and operates [the airport] and has the authority to grant to Airline rights and privileges concerning the occupancy and use of the Airport." Def. Ex. 675, at 271; Def. Ex. 676, at 3459; Def. Ex. 677, at 3642; Def. Ex. 678, at 184. Section 2.1 of the SLOAs states, "The Port grants to Airline a nonexclusive license to use the Airfield Area, in common with others, *subject at all times to the exclusive control and management by the Port*." Def. Ex. 675, at 277; Def. Ex. 676, at 3465; Def. Ex. 677, at 3648; Def. Ex. 678, at 190 (emphasis added).

[4] The licensing agreement required EAGLE to comply with all port rules and regulations. CP at 8377 ("Licensee shall comply with all Port regulations including the Port's SCHEDULE OF RULES AND REGULATIONS" for Sea-Tac Airport). Under the

Port's rules and regulations.[5] *Id.* at 3514-20. The Port argued that this evidence proved that the Port did not retain the right to control "how the ground support people maintained their equipment, how the air carriers maintained their equipment, how they did their job." *Id.* at 3520-21.

The jury instructions defined the nature and scope of the Port's liability. First, jury instruction 13 explained to the jury the bases of the Port's alleged negligence:

> (a) The plaintiff claims the defendant retained the right to control the manner in which the plaintiff's employer, [EAGLE], performed its work and maintained the equipment used by EAGLE to provide ground support for the non-party air carriers . . . and failed to maintain a safe work site.
> . . . .
> (c) The plaintiff also claims that because defendant allegedly retained control of the manner in which EAGLE employees performed their work and maintained their equipment, the defendant had a duty to ensure compliance with [WISHA] regulations related to that work, which it failed to do.

CP at 4795 (omitting Afoa's premises liability claim). The same instruction explained the Port's affirmative defense that the airlines were negligent for

> Failing to comply with applicable safety regulations; and/or
> Failing to provide the plaintiff with a safe place to work.

---

licensing agreement, "[a]s solely determined by the Port, equipment appearing to be unsafe or unoperational is subject to towing, impoundment and storage charges." *Id.*

[5] Under the Port's general rules and regulations, "[a]ll persons on the Airport property shall be governed by the rules and regulations herein prescribed and by orders and instructions of the Commission." Def. Ex. 482, at 31. Additionally, a port rule states, "No person shall operate any . . . motorized equipment in the Air Operations Area of the Airport unless such . . . motorized equipment is in a reasonably safe condition for such operation." *Id.* at 54.

CP at 4796.[6]

Jury instruction 23 told the jury that the Port had a nondelegable duty to maintain a safe workplace

> only if the landowner retains the right to control the manner and instrumentalities by which the work is performed by that worker at the job site.

CP at 4807. Jury instruction 26 addressed the Port's nondelegable statutory duty, explaining that

> [a] land owner, like the defendant, has a duty to ensure compliance with applicable safety regulations . . . only if the land owner retains the right to control the manner and instrumentalities by which the work is performed by that worker at the job site.

CP at 4810. Finally, jury instruction 28 specifically addressed the retained control test in the context of landowners, such as the Port:

> Authority to inspect work, order it stopped and started, or require contract compliance do not alone constitute retention of the right to control the manner and instrumentalities by which a worker who is not directly employed by a land owner performs work at a job site.

CP at 4812. These jury instructions adhere to the nondelegable duty doctrine described in *Afoa* I.

Question 1 on the special verdict form asked the jury whether the Port "retain[ed] a right to control the manner in which the plaintiff's employer, [EAGLE],

---

[6] The instruction also set forth the Port's affirmative defense alleging that EAGLE committed these same acts of negligence. CP at 4796.

performed its work or maintained its equipment used to provide ground support work for the non-party air carriers." CP at 4839. This was the sole question concerning retained control, and the Port argued to the jury:

> These are the reasons why you must answer question number 1 "no." The Port did not retain the right to control how the ground support people provided, maintained their aircraft -- excuse me, how the ground support people maintained their equipment, how the air carriers maintained their equipment, how they did their job. The Port simply did not do that. They did not retain the right to control. The answer to that question is no.

VRP at 3520-21.

Underscoring that the key disputed issue was who was responsible for the safety breaches that caused Afoa's injuries, the Port urged the jury to find that the airlines, not the Port, retained control:

> And if somebody was going to see a problem, it would have been the air carrier. And if they saw, they had a duty to fix it. They had a duty to tell EAGLE to fix that equipment. That's the right—that's the control they retained.

VRP at 3530-31; *see also id.* at 3532-33 ("They have sued the wrong party, and the Port of Seattle has been wrongly accused of doing something wrong.").

Rejecting the Port's argument, the jury answered question 1, "Yes." CP at 4839. Its affirmative answer conclusively establishes that the Port retained the relevant right to control the manner and instrumentalities of Afoa's work, as described in jury instruction 28, relating directly to the circumstances of his injury. It also establishes that the Port had a nondelegable common law duty to maintain a

-17-

safe work site at Sea-Tac Airport, consistent with jury instruction 23, and a nondelegable, statutory specific duty to ensure WISHA compliance, consistent with jury instruction 26.

The jury's verdict is dispositive that the Port's control over the work site is sufficiently analogous to that of a general contractor to support the nondelegable duty theory of vicarious liability. As a result, the Port, no less than a general contractor, is not only directly liable for its own negligence but also vicariously liable for safety breaches by others.

The majority misunderstands the import of the verdict when it insists that the jury needed to separately find the Port exercised control over the air carriers in addition to EAGLE. Majority at 13. This was not even the Port's theory.[7] As the Port's closing argument makes clear, the parties understood at trial that the special verdict interrogatory fully covered the issue of the Port's retained control over Afoa's work conditions by asking whether it controlled EAGLE's manner of work.

---

[7] The Port did argue that federal aviation law preempted claims based on retained control at Sea-Tac Airport, but we expressly declined to grant review of the preemption issue, as the majority recognizes. *See* majority at 6 n.4. It is therefore unclear why the majority finds it significant that: "[t]he relationship between the Port and the airlines is highly regulated under federal law, which makes these relationships different from most worksites in the state. In fact, the Port is prohibited from controlling certain aspects of airline operations." *Id.* at 3 n.1 (citing 14 C.F.R. pts. 139 (Airport Certification), 121 (Air Carrier Certification)). If this is a veiled preemption argument, it has no place in our analysis of the Port's conceded nondelegable duty.

No one advanced the agency theory of "entity control" that the majority insists on. *See* majority at 15 & n.12 (citing *Moss v. Vadman*, 77 Wn.2d 396, 402-03, 463 P.2d 159 (1969); *Matsumura v. Eilert*, 74 Wn.2d 362, 368, 444 P.2d 806 (1968)). And there is no case that supports the majority's fiction of multiple nondelegable duties.

To support its view that the Port and the airlines each breached independent nondelegable duties, the majority attaches great significance to the jury's finding that the airlines were negligent. *Id.* at 9-10, 17. This is not a reasonable reading of the verdict. As noted, there is no jury finding that the airlines retained control over Afoa's work conditions, only a finding that the Port retained control. The jury's verdict logically rests on its finding that the airlines failed to comply with safety regulations or maintain a safe work site with respect to matters *under their direct control*, as the Port alleged. *See* CP at 4796 (jury instruction 13), 4806 (jury instruction 22). Simply put, they were also at fault for the safety breaches that caused Afoa's injury. But this does not mean they breached a nondelegable duty. For reasons already discussed, the presence of concurrent duties at a multiemployer work site is unremarkable; of course a landowner and a contractor have concurrent duties under WISHA and the common law. In light of its retained control, however, the Port's workplace safety duty is seen as "prime" or "primary." *Moen*, 128 Wn.2d at 757. As we explained in *Afoa* I, only the Port "operates a major airport facility, is

-19-

responsible for its own employees, and allows controlled access to thousands of employees of other employers." 176 Wn.2d at 474. Under these circumstances, only the Port is analogous to a general contractor and owes a nondelegable duty.

Under the nondelegable duty doctrine, the test of control is the *right* to exercise control over the manner of work and, more specifically under WISHA, compliance with safety standards. Here, the jury determined that the Port retained the requisite control at Sea-Tac Airport, including with respect to the maintenance of EAGLE's equipment directly relating to Afoa's injury. It therefore had a common law and statutory specific duty to maintain workplace safety without regard to whether others at the work site, including the airlines, also owed a duty. Because the nondelegable duty doctrine is a form of vicarious liability, the Port is responsible for the airlines' negligence, just as it would have been for EAGLE's negligence had the employer not been immune under Title 51 RCW. There was no need for any separate factual finding of retained control directly over the airlines. The majority's analysis misses the very point of the nondelegable duty doctrine—vicarious liability—and therefore fails to give proper effect to the jury's verdict.

Given the jury's clear finding that the Port breached its nondelegable duty, the only basis for relieving the Port of its liability for the airlines' share of the allocated fault is if RCW 4.22.070 abrogated vicarious liability in this instance. As explained

below, the statute did no such thing. To the contrary, the legislature fully preserved joint and several liability under agency principles that subsume the nondelegable duty doctrine.

III. RCW 4.22.070 Preserves Joint and Several Liability for Defendants with Vicarious Liability under the Nondelegable Duty Doctrine

RCW 4.22.070 generally abolished joint and several liability among concurrent tortfeasors, preferring several liability based on proportionate fault. *Moen*, 128 Wn.2d at 760. The legislature recognized, however, that joint and several liability remains appropriate in narrow circumstances. *Kottler v. State*, 136 Wn.2d 437, 444, 963 P.2d 834 (1998). It therefore retained common law joint and several liability in situations where the defendant has traditionally been vicariously liable for the acts of another by virtue of an agency status or relationship. Under RCW 4.22.070(1)(a),

[a] party shall be responsible for the fault of another person or for payment of the proportionate share of another party where both were acting in concert or when a person was acting as an agent or servant of the party.

The question in this case is whether RCW 4.22.070(1)(a) provides for joint and several liability when vicarious liability is based on the common law nondelegable duty doctrine. Stated differently, we must consider whether the phrase "acting as an agent or servant" encompasses the historical development of agency law beyond the simple "master-servant" context to include the nondelegable duty. *See Afoa* I, 176

Wn.2d at 475 (recognizing the nondelegable duty doctrine is an "expansion" of the master-servant relationship).

The Port urges a stingy reading of the statutory language. It insists that the plain language of RCW 4.22.070(1)(a) preserves joint and several liability *only* in master-servant or principal-agent relationships; by not mentioning the nondelegable duty doctrine, the Port argues, the legislature effectively abrogated it, or at least the doctrine's effect of creating vicarious liability. Pet. for Review at 18-19. This argument allows the Port to concede that the jury verdict establishes its breach of a nondelegable duty, but without its usual effect of incurring joint and several liability.

Significantly, the majority rejects the Port's literalistic interpretation of RCW 4.22.070(1)(a), though it ultimately agrees with the Port in result. The majority recognizes that RCW 4.22.070(1)(a) retains common law vicarious liability in nondelegable duty situations. Majority at 12-13. However, the majority also insists that joint and several liability premised on the WISHA specific or common law nondelegable duty to provide a safe workplace requires proof of a direct agency relationship. *See id.* at 16 ("The jury must find that the defendant controlled another entity before the defendant is vicariously liable for that other entity's negligence."). This notion of direct entity control is antithetical to the nondelegable duty doctrine, which was developed to expand vicarious liability beyond the narrow principal-

agent, master-servant relationship. The key to finding a nondelegable duty is not entity control, but the right to control the manner of work at a multiemployer work site. The jury's verdict plainly establishes that the Port had such work site control at Sea-Tac Airport.

RCW 4.22.070(1)(a) is properly understood to embrace the nondelegable duty doctrine as a form of vicarious liability in agency law, without regard to direct entity control. As the majority concedes, RCW 4.22.070(1)(a) preserves common law vicarious liability in agency law. *Id.* at 13 ("RCW 4.22.070(1)(a) 'explicitly retains principles of common law vicarious liability' within its exceptions" (quoting *Johnson v. Recreational Equip., Inc.*, 159 Wn. App. 939, 950, 247 P.3d 18 (2011)).[8] Vicarious liability under the nondelegable duty doctrine arises from the very same principles as vicarious liability in the more traditional agency relationships the doctrine expands on. *See* RESTATEMENT (SECOND) OF TORTS ch. 15, topic 2, intro. note at 394 (nondelegability rules, which arise out of some relation toward the public or the particular plaintiff, "are rules of vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the

---

[8] *See also Kottler*, 136 Wn.2d at 446 (noting RCW 4.22.070's preservation of traditional vicarious liability in agency law); RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 13 cmt. b reporters' note at 115 (AM. LAW INST. 2000) (citing RCW 4.22.070(1)(a) as an example of a statute that "state[s] explicitly that vicariously liable parties remain jointly and severally liable").

employer has himself been at fault"). Because "nondelegable" means that the control party may delegate the work but not the liability, the liability imposed under the nondelegable duty doctrine has long been described as "closely analogous to that of a master for the negligence of his servant." *Id.* A finding of a nondelegable duty is sufficient to establish vicarious liability.

While the Port is correct that RCW 4.22.070(1)(a) references only "agent" and "servant," this particular choice of words alone does not evidence the legislature's intent to *abrogate* the nondelegable duty doctrine. The doctrine operates exactly the same as other rules of vicarious liability. Indeed, it was intended to expand beyond traditional principal-agent relationships so that those with control over complex work sites could no longer avoid liability by using "independent contractors" rather than direct agents. *See* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 57 cmt. b (AM. LAW INST. 2012) ("The label 'nondelegable duty' does not mean that an actor is not permitted to delegate the activity to an independent contractor. Rather, the term signals that the actor will be vicariously liable for the contractor's tortious conduct in the course of carrying out the activity."); RESTATEMENT (SECOND) OF TORTS ch. 15, topic 2, intro. note at 394 (nondelegable duties "arise in situations in which, for reasons of policy,

the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor").

In sum, RCW 4.22.070(1)(a) preserves joint and several liability in vicarious liability contexts recognized in agency law. The nondelegable duty doctrine, as a form of vicarious liability recognized in agency law, is therefore encompassed within the traditional joint and several liability retained in RCW 4.22.070(1)(a). Consistent with the Port's nondelegable duty, the Court of Appeals properly held that the Port is vicariously liable for the airlines' breach of the duty to provide a safe workplace and was not entitled to reduce its liability based on an allocation of fault to the nonparty airlines. *Afoa* II, 198 Wn. App. at 234. Regardless of whether it was appropriate under RCW 4.22.070 to allow the airlines to be listed as "empty chairs" in the first instance, the Port is jointly and severally liable for breach of both its own duty and the airlines' duty to maintain a safe workplace. The trial court should have entered judgment against the Port for the airlines' assigned fault as well as for the Port's assigned fault.[9]

---

[9] The majority mischaracterizes the Port's nondelegable duty as "*minimiz[ing]* the airlines' responsibility under our system of comparative fault." Majority at 16 (emphasis added). Again, the majority misses the very point of the nondelegable duty doctrine as a theory of vicarious liability—the Port, as a jobsite owner with retained control over a multiemployer work site, retains legal responsibility for the safety breaches by others on the jobsite.

IV.    The Majority's Inflexible Interpretation of RCW 4.22.070(1)(a) Essentially Destroys the Safe Workplace Doctrine and Undermines WISHA

The majority's interpretation of RCW 4.22.070(1)(a) as requiring a factual showing of a principal-agent or master-servant relationship essentially destroys the workplace safety doctrine and will result in general contractors and jobsite owners passing off liability to subcontractors and others who commit safety breaches. It represents a step backward from our recognition in *Afoa* I that vicarious liability under the nondelegable duty doctrine is intended "to place the safety burden on the entity in the best position to ensure a safe working environment." 176 Wn.2d at 479. The majority retreats to labels—"agent" and "servant"—despite the recognition in *Afoa* I that we must "look[] beyond mere labels and consider[] the principles and policies that underlie our doctrine." *Id.* at 475. "The common law owes its glory to its ability to cope with new situations, and its principles are not mere printed fiats but living tools to be used in solving emergent problems." *Id.* at 480.

Interpreting RCW 4.22.070 to abrogate vicarious liability under the nondelegable duty doctrine not only disregards the evolution of our common law but also creates a conflict between two statutes, WISHA and RCW 4.22.070. Under WISHA's specific duty, though a general contractor and a subcontractor have a shared duty to ensure WISHA compliance, the general contractor has the primary responsibility to ensure the safety of all workers on the jobsite. The subcontractor

retains concurrent responsibility to meet workplace safety standards in performing its work. Here, it is undisputed that the airlines, no less than Afoa's employer, EAGLE, had a duty to maintain workplace safety. But their duty is limited to the scope of their work because, unlike a general contractor or owner, subcontractors do not have innate supervisory authority over the jobsite. *Stute*, 114 Wn.2d at 463. Because the general contractor has the primary duty to ensure WISHA compliance, a subcontractor's violation of WISHA is chargeable to both the subcontractor and the general contractor. The majority's holding creates a direct conflict between RCW 4.22.070 and WISHA.

In creating this false conflict, the majority decision renders meaningless statutorily recognized indemnity rights. Chapter 4.22 RCW preserves contractual indemnity rights between responsible parties because they are jointly and severally liable. *See* RCW 4.22.040(1) (recognizing right of contribution among joint tortfeasors). "If a general contractor and a subcontractor are severally liable to an injured employee, there would be no need for an indemnification agreement at all on any project." *Moen*, 128 Wn.2d at 760. The majority's decision conflicts with *Moen* by failing to appreciate that any concurrent negligence by the airlines remains chargeable to the Port in the first instance precisely because its duty to Afoa is a nondelegable duty. Even if the airlines could be described as owing separate

concurrent nondelegable duties—which they cannot be in the absence of any jury finding of workplace control—the liability between the Port and the airlines would remain joint and several. *Moen* could not be clearer about this point. *Id.* at 761-64. The Port remains vicariously liable for the airlines' negligence, without regard to whether the contracting parties might have independent indemnification rights to "settle up" their relative responsibilities.[10]

## CONCLUSION

The Court of Appeals correctly recognized the consequence of the Port's breach of its nondelegable duty to provide a safe workplace to Afoa: the Port is liable for its own negligence and vicariously liable for negligence of others at the work site, including the airlines. Because RCW 4.22.070 preserves vicarious liability under the nondelegable duty doctrine, the trial court should have entered judgment holding the Port jointly and severally liable for the proportionate share of

---

[10] Unsurprisingly, the Port's lease agreement with each airline contains an indemnification clause for this exact purpose. The airlines have a duty to indemnify the Port for all liability arising from injuries sustained by any person directly or indirectly employed by the airlines, including "subcontractors" like Afoa. *See* CP at 8148. Under the indemnification clause, "[a]ny final judgment rendered against the Port for any cause for which Airline is liable hereunder shall be conclusive against Airline as to liability." *Id.* As in other multiemployer contexts, the Port may shift liability to the airlines using the indemnification agreement. It is the indemnification agreement that "ensure[s] a party generally will not have to bear financial responsibility for the fault of another." *Moen*, 128 Wn.2d at 761. The majority needlessly dismantles the nondelegable duty doctrine and RCW 4.22.070 in order to solve a perceived unfairness that does not exist.

fault assigned to the airlines. I would remand for entry of a corrected judgment against the Port.